### TERRY v. UNITED STATES.
No. 48615.

United States Court of Claims.
June 5, 1951.

Mahlon C. Masterson, Washington, D. C. (Joseph B. Kennedy, Jr., and Ansell & Ansell, all of Washington, D. C., on the briefs), for plaintiff.

R. W. Koskinen, Asst. Atty. Gen., H. G. Morison and Acting Asst. Atty. Gen. Newell A. Clapp, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiff, Francis V. Terry, served in the National Army and in the United States [Regular] Army from 1907 to 1920, when he was retired from active duty in the rank of first lieutenant. On August 24, 1942, he was recalled to active duty and rose to the rank of major prior to his release from active duty and return to the retired list on October 11, 1946. On March 4, 1946,

Major Terry entered an army hospital for a routine final-type physical examination. This examination disclosed certain physical ailments requiring immediate treatment, and plaintiff was hospitalized continuously from that date until September 4, 1946, with the exception of 30 days' "sick leave" granted him by the commanding officer of the hospital. While plaintiff was confined to the hospital, the Army purported to place him upon terminal leave effective June 22, 1950. By the time plaintiff was discharged from the hospital and entered upon the enjoyment of his leave, 75 days out of the 112 days he had accrued as of June 22, 1946, had been charged off, and upon the expiration of the remaining 37 days leave, he was released from active duty and returned to the retired list with the retired pay of a first lieutenant. Plaintiff contends that during his period of hospitalization he was not on "leave" and that when released to inactive duty on October 11, 1946, he still had to his credit 75 days of leave for which he is entitled to be compensated at the rate of pay and allowances in the rank of major which he held at the date of discharge.

The Government contends that plaintiff has received all the leave to which he is entitled. Defendant's theory of the case is: (1) that plaintiff was properly placed on terminal leave even though hospitalized at the same time; (2) that, under the laws and regulations pertaining to leave prior to August 9, 1946, 10 U.S.C.A. §§ 841-842, leave might be granted or withheld in the discretion of the Secretary of War and that the plaintiff has no legal claim for the denial of leave; and (3) that plaintiff acquired no rights under the Armed Forces Leave Act of 1946, 60 Stat. 963, 964, approved August 9, 1946, 37 U.S.C.A. § 31a et seq., 10 U.S.C.A. § 18 note, because he was on terminal leave on the effective date of that Act and so could not benefit from it.

Initially, we must determine whether Major Terry, under the laws and regulations then in force, was, as the Government contends, concurrently hospitalized and on terminal leave. The statutes in effect prior to August 9, 1946, are not express upon the point. Those statutes, the Acts of March

3, 1863, 12 Stat. 731, 736, May 8, 1874, 18 Stat. 43, and July 29, 1876, 19 Stat. 102, since compiled as 10 U.S.C.A. §§ 841–842, were enacted during and shortly after the Civil War and long before the origin of the phrase "terminal leave". Army Regulations, issued under authority of the statutes express the War Department policy on leave matters and contain detailed rules implementing the statutory expressions. Army Regulations are, in effect, administrative determinations of the meaning of the basic statutes as applied to the Army, and where within the authority of the statutes, they must be accorded the force of law. Army Regulation 605–115 as amended by Change 2 and supplemented by War Department Circular 116 governed the leaves of absence of commissioned officers on June 22, 1946, the date the Army purported to place plaintiff on terminal leave and to fix the date of his release from active duty. Paragraph 16(a) (1) provided that an officer about to be relieved from active duty but not separated from the service might be granted "terminal leave" to the number of days he had accrued while on active duty. Paragraph 18 ordered that officers in the majority of classifications who might be hospitalized while on terminal leave should revert to duty status during their period of hospitalization and upon discharge from hospitalization should have their terminal leave recomputed to commence from date of release from the hospital. However, it was expressly provided that officers in plaintiff's classification [1] who might be hospitalized while on terminal leave should continue on terminal leave while hospitalized and their retirement or relief from active duty made effective as previously ordered.

It has been the interpretation of the Army's Judge Advocate General that leave of absence, prior to the Armed Forces Leave Act of 1946, might be granted or withheld in the discretion of the Secretary of War and that such leave was a privilege rather than a right. We may accept this proposition as true for the purpose of this decision.[2] But we cannot accept it as the basis for deducting leave credit from the account of an officer on duty.

Army Regulation 605–115, as amended, does not authorize a hospitalized officer to be considered as upon leave. The paragraph relied on by defendant—paragraph 18 as amended by Change 2 and supplemented by War Department Circular 116—provides that when officers in plaintiff's classification are hospitalized while on terminal leave they "will continue on terminal leave while hospitalized and their retirement or relief from active duty will become effective as previously ordered." This provision, assuming it to be fully valid, falls considerably short of authorizing what was done here. In the instant case, Major Terry did not enter upon leave and then report for hospitalization. Rather, he was ordered upon terminal leave while confined to the hospital. Were we to give unquestioned effect to every army regulation that has been called to our attention, we would still lack authorization to approve the placing of an officer confined in an army hospital upon leave—terminal or otherwise—and to approve deductions from his leave account while he remained a patient.

 The infirmity is deeper. The army leave statutes in effect prior to August 9, 1946, are not entirely clear, but are certainly susceptible to the interpretation long accorded that leave may be granted or withheld officers in the discretion of the Secretary of War. Such an interpretation is compatible with the uncertainties and emergent situations inherent in military personnel administration. That the Secretary may grant or withhold leave in his discretion does not mean that the Secretary may strike off a man's accrued leave at the Secretary's discretion. It does not mean that a man may be given a "paper" leave while in duty status. "Terminal leave", it appears, is a term of art originating during World War II. We understand it, however, to be a self-defining term meaning a leave of absence granted at the end of one's period of service. It has never before been

1. Retired Regular Army officer whose appearance before an Army retiring board had been determined to be inappropriate.

2. Cf. Whelpley v. United States, 118 Ct. Cl. ——, Ct.Cls.No.48589, decided March 6, 1951.

suggested to us that "terminal leave" was something other than a leave of absence granted at a particular time in one's military career. We have always thought that "leave" meant a vacation, a getting away from military duties, a chance to visit home. A scholar of military terminology defined it in 1881 as: "The permission which officers of the army obtain to absent themselves from duty." [3] This court held in 1904 that if an officer or soldier was subject to the orders of superior authority, whether such officer or soldier did much or little or any duty, or if the officer or soldier was by order under medical or surgical treatment in a hospital, or otherwise subject to the orders of the medical staff, then such officer or soldier was not on furlough; or, in other words, if his time had not been placed at his own disposal, then the furlough did not exist.[4] We have before us today nothing to indicate that the adjective "terminal" as a word of art or in its usual sense, modifies the noun "leave" so that it means anything else than permission to be absent from duty.

Turning to AR 40–590, entitled *Medical Department—Administration of Hospitals, General Provisions,* we find that under the authority of paragraph *2b* (2), "* * * By order of the Commanding Officer * * * convalescent patients may be employed to perform such light duty in and about the hospital as may be of therapeutic value or which may tend to improve their physical condition." Paragraph *7j* instructs commandants of hospitals as to the procedure to follow in the case of patients absent without leave. Paragraph 10 provides that, "Hospital clothing will be worn by patients during their stay in hospitals * * *." The only inference possible from AR 40–590 is that an officer hospitalized in an army hospital is on duty in the sense that he is under immediate supervision, may be called upon to perform such work as he is able, must wear prescribed garments, may leave the hospital only with the permission of the commanding officer, and is subject to the orders and discipline of the hospital staff. None of these conditions are compatible with a leave status, and we conclude that during the period of time plaintiff spent in army hospitals he was not on "terminal leave".

■ Nor was plaintiff on "terminal leave" during the 30-day period of "sick leave" granted by the hospital commandant. "Sick leave", in which status an officer is entitled to receive his full pay indefinitely (as long as no misconduct is involved), is distinguished by statute from "leave" with its time limitations, etc.[5] These statuses are incompatible. Plaintiff was admittedly absent from duty because of illness and was properly placed on sick leave rather than upon ordinary or terminal leave. Properly approved absence because of sickness cannot be charged against accrued leave.

■ Plaintiff entered leave status when he was released from the hospital September 4, 1946. On that date leave was governed by the Armed Forces Leave Act of 1946, 60 Stat. 963, and plaintiff's rights are determinable under that statute.

■■ Plaintiff was on active duty and not on terminal leave on September 1, 1946. The Act of 1946 entitled him on that date to receive payment in cash, computed at the rate of pay and allowances then being drawn, for all leave accrued as of August

3. Wilhelm, Military Dictionary and Gazeteer.

4. Magurn v. United States, 39 Ct.Cl. 416, 419. Technically, the word "furlough" applies to the leave of absence granted enlisted men; the term "leave of absence" applying only to officers. The terms are often used synonymously, however, and this particular case dealt with the "mustering-out furlough" of an officer. For all practical purposes the "mustering-out" leaves of absence and furloughs granted after the War with Spain (dealt with in the Magurn case) were the same as the "terminal leave" granted after World War II. In neither case was the Government bound to grant leave at the end of a man's period of service, but in both cases it was done to give the released soldier an opportunity for readjustment. It was, of course, also intended to equalize the benefits of those who had been so stationed as to be unable to utilize their leave with those who had been more fortunate.

5. Compare 10 U.S.C.A. §§ 841, 842, and 847.

31, 1946 (including leave carried forward from prior to the date of the Act), in excess of 60 days and up to 120 days.[6] Plaintiff was wrongfully denied such payment. Plaintiff is entitled to judgment for the monetary value of such leave computed at the rate of pay and allowance to which plaintiff was then entitled as a major.

Section 3(a) of the Act of 1946 provides that: "In the case of members who are retired after the date of enactment of this Act and after retirement are continued on or recalled to active duty, leave accrued during service prior to retirement may be carried over to the period of service after retirement." This section indicates that the retirement of Regular Army men having unused leave credit was contemplated and that no requirement exists under the Act of 1946 that such officers be given terminal leave to the full extent earned or that they be compensated for accrued leave other than by being allowed to carry it forward to another period of active duty. It also appears that the Secretary of War had the right to return plaintiff to the retired list at his discretion and that plaintiff has no legal ground for contesting his return to the retired list on October 11, 1946. Should plaintiff be recalled to active duty, he would be entitled to have carried forward the balance of his leave after deducting all over 60 days compensated for as of September 1, 1946, and all leave taken between September 4, 1946 and October 11, 1946.

It is noted in passing that the provisions of law contained in 37 U.S.C.A. § 33a (incorrectly cited in defendant's brief as 37 U.S.C.A. § 33(a)) are not applicable here inasmuch as that section was not in effect at the time plaintiff's rights vested, having been enacted into law on August 4, 1947, 61 Stat. 748. Our decision, however, is in harmony with the provision of that Act.

Judgment is for the plaintiff, but the entry thereof is withheld pending the submission of a stipulation by the parties as to the amount thereof computed in accordance with this decision.

It is so ordered.

JONES Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

6. See Sec. 5(b, c), Sec. 6(a) (1) (iii) and Sec. 9, Armed Forces Leave Act of 1946, 60 Stat. 963, 37 U.S.C.A. §§ 34 (b, c), 35(a) (1) (iii), 31a note.