Leandro S. **FERRER**

v.

The **UNITED STATES.**

No. 148–52.

United States Court of Claims.
July 12, 1955.

Leandro S. Ferrer, pro se.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., Paris T. Houston, Washington, D. C., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action brought by plaintiff to recover pay and allowances to which he alleges he is entitled as an incident to his service in the organized military

forces of the Commonwealth of the Philippines. The defendant has filed a motion for summary judgment, relying upon the pleadings herein and defendant's brief in support of its motion together with exhibits attached thereto.

The issues before the court are: (1) Is an officer in the Philippine Army entitled under the Missing Persons Act, 56 Stat. 143, 50 U.S.C.A.Appendix, § 1001 et seq., to compensation from the United States for services rendered for a period during which, it has been determined by the War Department, he was in a "no casualty status"; (2) was the sum of ₱2,064.90 deducted from pay and allowances of the plaintiff, an officer of the Philippine Army, for insurance premiums; (3) is an officer of the Philippine Army, separated from active service on January 29, 1946, entitled to be compensated by the United States for leave accrued but not taken prior to such separation; (4) is an officer of the Philippine Army entitled to compensation from the United States equivalent to two months' pay pursuant to an administrative regulation of the Philippine Government.

Plaintiff was commissioned a first lieutenant in the Philippine Army in December 1941. The Philippine Army was called into the service of the armed forces of the United States on July 26, 1941. On April 17, 1942, he left his unit and was absent until December 28 following, during which time he alleges he was hiding in the hills to avoid capture by the enemy. On this last date he became a member of the Cebu Area Command, a guerilla organization. It is alleged, and for the purpose of this action defendant does not dispute, that plaintiff served with the guerillas from December 28, 1942, until August 13, 1945, when he returned to military control of the Philippine Army for processing. He was released from active duty in the Philippine Army on January 29, 1946.

On January 22, 1946, he executed an affidavit setting out a chronological record of his activities between March 21, 1942, and August 13, 1945, the date of his return to military control. The affidavit reveals that pay and allowances had been received to December 31, 1945, in the sum of ₱80.00 in Philippine currency in December 1943, ₱1,984.90 between March 26 and August 12, 1945, and ₱2,998.87 between August 13 and December 31, 1945.

Final payment was made to plaintiff on October 30, 1947, at which time a statement of pay and allowances was prepared by the Finance Service, Headquarters, Army of the Philippines, detailing the total amount of pay and allowances due plaintiff from March 21, 1942, through August 12, 1945. No pay was allowed between April 18 and December 27, 1942, for the reason that the duly designated subordinate of the Secretary of War, the Commanding General of the Philippine-Ryukyus Command, had determined that plaintiff was not in a casualty status during that period. The statement of pay and allowances deducted the total sum of $3,218.65 previously received by plaintiff. While two of the items making up this total were set out on that portion of the printed statement normally used for noting insurance premium due, they were so labelled as to denote that they were, in fact, deductions as a result of previous payments. The statement shows a deduction of three month, this was an overpayment for that period equivalent to three months' pay months' pay in the sum of ₱999.99 as a result of a like amount advanced to plaintiff, but does not show any payment as a gratuity or for terminal leave. Paragraph 4 of plaintiff's affidavit reveals payment to the plaintiff for the period from August 13 to December 31, 1945, in the amount of ₱2,998.87. Since his pay and allowances totalled ₱433.33 per and represented three months' pay to plaintiff in advance, for which appropriate deduction was made in the statement of pay and allowances.

We shall pass over the question of the right of an officer of the Philippine Army

to sue the United States for his pay and allowance and shall assume, for the purposes of this opinion only, that he has such a right. We do so only because we are of the opinion that plaintiff is not entitled to recover anyway

■ Plaintiff's first claim in his petition appears to be for pay from April 18, 1942, through December 27, 1942, at ₱433.33 per month, based on President Quezon's Executive Order No. 4, dated March 14, 1942.

Exhibit C attached to defendant's brief shows that the duly designated subordinate of the Secretary of the Army (in this case the Commanding General of the Philippine-Ryukyus Command) determined, under date of October 2, 1947, that during said period plaintiff was in a "no casualty status." Hence pay for this period was denied.

This court, in the case of Moreno v. United States, 93 F.Supp. 607, 610, 118 Ct.Cl. 30, held that where the provision that determinations as to " 'entitlement to pay' " under section 1009 of the Missing Persons Act, supra, are to be made by the department " 'and all such determinations shall be conclusive' ", it includes legal as well as factual elements. The court further held that Congress intended that the troublesome questions arising under the Missing Persons Act, supra, were not to be the subject of litigation.

Thus, in the instant case, the determination by the Commanding General that plaintiff was in a "no casualty status" is final and conclusive, and plaintiff is not entitled to pay for the period April 18, 1942, through December 27, 1942.

■ Plaintiff's second claim for erroneous deductions for insurance premiums is wholly without merit. The four amounts deducted, while placed opposite the printed notation of "Insurance premiums due (NSLI p/a)" were actually deductions of money paid to plaintiff, and admitted by plaintiff in his affidavit attached as exhibit A to defendant's brief

to have been received. Logically, had this sum represented insurance premiums sought to be charged the plaintiff, they would have been shown cumulatively as a separate sum. Obviously, these sums represented a breakdown of a total of ₱2,064.90, which figure appears directly below. Moreover, exhibit C, the determination of plaintiff's status under the Missing Persons Act, supra, shows no record of any NSLI issued plaintiff and that no insurance premiums are due from plaintiff.

Plaintiff's third claim is that he is entitled to payment for terminal leave at ₱433.33 per month, or a total of ₱1,299.99.

■ Terminal leave is a term of art originating during World War II. Terry v. United States, 97 F.Supp. 804, 120 Ct.Cl. 315, 323. It is leave of absence in the ordinary sense, the adjective being customarily employed to describe leave granted at the end of one's period of service. Terry v. United States, supra.

■ Prior to the enactment of the Armed Forces Leave Act of 1946, 60 Stat. 963, 37 U.S.C.A. § 31a et seq., leave of absence might be granted or withheld in the discretion of the appropriate military secretary. Leave was uniformly held by the military service to be a privilege rather than a right. Scott v. United States, 107 F.Supp. 846, 123 Ct.Cl. 547; Terry v. United States, supra. Thus, since plaintiff was not granted the leave, he was not entitled to it unless provision was made in the Armed Forces Leave Act of 1946, supra, or some other act which authorized payment for leave not asked for or granted. The Armed Forces Leave Act of 1946, supra, provided that enlisted men discharged prior to September 1, 1946, could be compensated for leave which Congress considered had accrued to them. However, it was not until an amendment of that act on August 4, 1947, 61 Stat. 748, that officers, discharged as plaintiff was, were entitled as a matter of permanent right to be

compensated for leave accrued but not taken prior to separation. That act does not provide compensation for accrued leave for officers discharged prior to August 31, 1946.

Therefore, had plaintiff been an officer in a regular military force of the United States at the time of his discharge on January 29, 1946, under the laws in effect on that date, he would not have been entitled to compensation for the leave which he alleges accrued to him. *A fortiore*, it follows from the above fact that, as a member of the Philippine Army, he is entitled to no more.

Plaintiff's remaining contentions are (1) that he did not receive a three months' advance in salary pursuant to Administrative Order No. 167 of December 12, 1941, Commonwealth Act No. 676; and (2) that he did not receive the two months' gratuity provided by Administrative Order No. 27 of December 7, 1945. These claims are not in the petition, but are set forth in the reply to defendant's answers.

The short answer to these contentions is that both claims are under Philippine law or regulations, and the First Supplemental Surplus Appropriation Rescission Act, approved February 18, 1946, 60 Stat. 6, 14, precludes plaintiff from consideration of any benefits save those enumerated therein.

A serious question as to whether or not the above claims are all barred by the six-year statute of limitations, 28 U.S.C. § 2501, is raised by the defendant. Inasmuch as all the questions raised can be and are decided, for the purposes of this opinion, we do not pass on the jurisdictional question.

Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.