Francis C. **POLLARD**
v.
The **UNITED STATES.**
No. 49840.

United States Court of Claims.
Nov. 6, 1957.

Samuel T. Ansell, Jr., Washington, D. C., for plaintiff.

Leroy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff, a retired officer of the United States Coast Guard who has been receiving since September 1, 1944 the retired pay of a lieutenant commander with more than 23 years of active service, has brought this suit claiming that he should have received (1) the active duty pay and allowances of a lieutenant commander with more than 23 years of service from September 1, 1944 through November 27, 1944, (2) the active duty pay and allowances of a lieutenant commander with more than 24 years of active service for the period November 28, 1944 through January 31, 1945, and (3) the retired pay of a lieutenant commander with more than 24 years of active service from February 1, 1945 to date. He asks judgment for the difference between what he has been receiving and what he claims he should have received.

Plaintiff says that the loss of the increased pay claimed resulted from the failure of the Coast Guard to grant his request to take his four months accumulated and unused leave prior to the effective date of his retirement. He also urges that because, under the provisions of the Uniform Retirement Date Act, 46 Stat. 253, 5 U.S.C.A. § 47a, retirement of officers may not take effect until the first day of the month following the month in which the retirement would otherwise be effective, the proper retirement date in his case should have been February 1, 1945.

On July 18, 1944, plaintiff, who was then serving as a lieutenant commander in the Coast Guard, appeared before a Coast Guard Retiring Board convened at the United States Marine Hospital, Ellis Island, New York. At that time, plaintiff had to his credit four months' accumulated leave of absence as an officer of the Coast Guard. Immediately following his appearance before the retiring board, he was granted sick leave for an indefinite period commencing July 19, 1944, pending action by the President on the retiring board proceedings.

On July 28, 1944, plaintiff wrote the Commandant of the Coast Guard calling his attention to the fact that he had to his credit four months of accumulated leave and asked that he be granted that leave *prior to the effective date of his retirement.* That letter, although mailed and properly addressed, was never received by the Commandant of the Coast Guard or his office and consequently, plaintiff's request for the leave was not acted upon.

On September 4, 1944, while plaintiff was still on sick leave pending action by the President on his retiring board proceedings, he was notified by a telegram of that date from Coast Guard Headquarters that he had been retired for physical disability effective September 1, 1944. By letter orders of September 22, 1944, from the Commandant of the Coast Guard, plaintiff was detached from all duty "effective as of 1 September 1944, the date of your retirement in accordance with the provisions of 14 U.S.Code § 169".[1]

As of the close of August 31, 1944, plaintiff had completed 23 years, 9 months, and 3 days of active service for pay purposes. On November 27, 1944, plaintiff would have completed 24 years

of service for pay purposes if he had remained on active duty through that date.

On June 5, 1946, plaintiff again wrote to the Commandant of the Coast Guard calling attention to his letter of July 28, 1944, and to the fact that he had not received a reply to that letter and had not been granted the unused accumulated leave which he had requested therein. Plaintiff renewed his request for the leave. The Coast Guard replied, noting that plaintiff's letter of July 28, 1944, was not in his file and denying his request for the leave. On September 29, 1950, plaintiff filed suit in this court. Thereafter, on December 31, 1954, plaintiff applied to the Board for Correction of Military Records of the Coast Guard asking that his military record be corrected to show (a) that he continued upon the active list of the Coast Guard for an additional period of four months beyond September 4, 1944, representing the four months of accumulated leave standing to his credit on September 1, 1944; (b) that his retirement was effected as of February 1, 1945; and (c) that he had completed 24 years of active service for pay purposes. This application was denied on July 13, 1955.

We shall first deal with plaintiff's assertions relative to the proper application of the provisions of the Uniform Retirement Date Act. He contends that since he received notice of his retirement for disability on September 4, 1944, with the actual retirement orders following on September 22, 1944, the earliest possible date of retirement under the act should have been October 1, 1944, and that if, as he contends, he should have been allowed to take his unused leave of four months, the earliest possible date of his retirement should have been February 1, 1945.

[1]. "When a retiring board finds that a commissioned officer, warrant officer, or enlisted man is incapacitated for active service, and that his incapacity is the result of an incident of service, or is due to the infirmities of age, or physical or mental disability, and not his own vicious habits, and such decision is approved by the President, he shall be retired from active service and placed upon a retired list. Commissioned officers, warrant officers, and enlisted men thus retired may be assigned to such duties as they may be able to perform, in the discretion of the Secretary of the Treasury." Now 14 U.S.C.A. §§ 241, 311; 10 U.S.C.A. § 1204.

The Uniform Retirement Date Act of April 23, 1930, supra, provided in pertinent part as follows:

"That hereafter retirement authorized by law of Federal personnel of whatever class, civil, military, naval, judicial, legislative, or otherwise, and for whatever cause retired, shall take effect on the 1st day of the month following the month in which said retirement would otherwise be effective, and said 1st day of the month for retirement hereafter made shall be for all purposes in lieu of such date for retirement as may now be authorized; * * *"

██ Defendant has not briefed this matter. We are of the opinion that plaintiff has correctly interpreted the above act as applied to the facts in his case. See Scott v. United States, 107 F.Supp. 846, 123 Ct.Cl. 547, 551. The plain language of the above quoted statute requires the conclusion that retirement *for whatever cause* shall be on the first day of the month following that month in which the retirement would otherwise be effective, and in the case of plaintiff, that would result in his retirement on October 1, 1944, if he was not entitled to receive the four months of accumulated leave to his credit in September 1944, or on February 1, 1945, if he was entitled to receive such four months leave. While it would seem that the secretaries involved should have had authority to retire disabled personnel *immediately* upon determining the fact of disability, the law in existence at the time of plaintiff's retirement did not grant such authority. In fact, it was not until 1956 that Congress amended the retirement date law to permit the secretaries to do what was done in plaintiff's case, i. e., to specify an earlier effective date for the retirement of members of the uniformed services who were being retired for physical disability. 70 Stat. 933, 5 U.S.C.A. § 47a. With respect to that amendment, House Report No. 2797 [2] stated as follows:

"Section 1 of the bill amends the act of April 23, 1930, entitled "An Act to provide for a uniform retirement date for authorized retirements of Federal personnel" to provide that the effective date for retirement of members of the uniformed services for permanent physical disability or placement on a temporary disability list shall be the date specified by the Secretary concerned.

"Under present law the uniformed services are forced to retain employees who are disabled and eligible for disability retirement on the active payrolls *until the end of the month following the date on which retirement action is taken.*" [Italics supplied.]

We are of the opinion that under the clear language of the Uniform Retirement Date Act in effect on the date of plaintiff's retirement and also in effect throughout the year 1945, the effective date of his retirement should not have been earlier than the first of the month following the month in which his retirement would otherwise have been effective.

We now turn to the question of in what month should plaintiff's retirement have been "otherwise * * * effective." If, as plaintiff contends, he was entitled as a matter of law to receive all of his accumulated unused leave of four months prior to retirement, his retirement would have been "otherwise effective" in January, 1945, and the retirement date would have been February 1, 1945. If, as defendant contends, the granting of accumulated unused leave is a matter left solely within the discretion of the secretary concerned, plaintiff should have been retired on October 1, 1944. Plaintiff urges that if the secretary did have authority to deny an officer the right to take his leave, then under the holding of this court in Whelpley v. United States, 119 Ct.Cl. 56, he became entitled to such leave in the absence of

2.  U.S.Code Cong. and Adm.News, 84th Cong., 2d Sess., 1956, Vol. 3, p. 4140.

any action by the secretary expressly denying such leave.

Upon a reexamination of the court's holdings in the cases relied on by the parties,[3] some of which are distinguishable from the instant case on their facts, we have come to the conclusion that the answer lies in the statutes applicable to officers' leave and in their legislative histories.

The Act of July 29, 1876, 19 Stat. 102, provided as follows:

"That an act approved May eighth, eighteen hundred and seventy-four, in regard to leave of absence of Army officers, be, and same is hereby, so amended that all officers on duty *shall be allowed,* in the discretion of the Secretary of War, sixty days' leave of absence without deduction of pay or allowances: *Provided,* That the same be taken once in two years: *And provided further,* That the leave of absence may be extended to three months, if taken once only in three years, or four months if taken only once in four years." [Italics supplied.][4]

■ Defendant takes the position that because of the phrase "in the discretion of the Secretary", the secretaries of the various armed services have authority not only to determine *when* leave shall be taken but also *whether* leave may be taken at all. We are of the opinion that defendant has given too broad application to the phrase in question and that in using those words Congress merely intended to confer upon the secretaries discretion to determine *when* leave granted to officers by the act should be taken, and not *whether* it might be taken at all. We are persuaded to his conclusion by the use of the words: "That * * * Army officers on duty *shall be allowed*". If Congress had intended to

give the secretaries authority to deny leave altogether, we think it would have phrased the statute in language somewhat as follows: "That in the discretion of the Secretary * * * officers *may* be allowed sixty days leave, etc.", or "That Army officers *may,* in the discretion of the Secretary * * * be allowed * * *."

The above quoted Act of July 29, 1876 was an amendment to the Act of May 8, 1874, 18 Stat. 43, which clearly gave leave to officers without any limitation whatsoever. That statute provided as follows:

"That all officers on duty at any point west of a line drawn north and south through Omaha City, and north of a line drawn east and west upon the southern boundary of Arizona, *shall be allowed* sixty days' leave of absence without deduction of pay or allowances: *Provided,* That the same is taken but once in two years: *And provided further,* That the leave of absence may be extended to three months, if taken once only in three years; or four months if taken once only in four years." [Italics supplied.]

The above statute granted to those officers who were stationed in the far west 60 days of leave at one time rather than the 30 days which had been previously allowed, and it also provided that officers while on leave should receive full pay and allowances instead of half pay, as provided under prior law.

In 1876, the forerunner of the present leave act was introduced in the House of Representatives and passed by the House. This was a bill to amend the above quoted Act of May 8, 1874, to make its provisions applicable to *all* officers, regardless of where those officers might be stationed. No change in language was proposed other than the dele-

3. Whelpley v. United States, supra; Terry v. United States, 97 F.Supp. 804, 120 Ct.Cl. 315; Ferrer v. United States, 140 F.Supp. 954, 132 Ct.Cl. 422; Scott v. United States, supra; Waters v.

United States, 140 F.Supp. 957, 135 Ct. Cl. 274.

4. By later statutes, the above act was made applicable to the Coast Guard. Now 37 U.S.C.A. §§ 31a–33, 34–38.

tion of the territorial designation. When the bill reached the Senate, it was called to the floor by Senator Logan who stated:

"The Senator from Vermont [Mr. Edmunds] has made a suggestion which I think is a very proper one, and that is to provide that *in case of emergency* the Secretary of War may use his own discretion in granting leaves of absence. I do not object to that at all. I move to insert:

"Subject to the power of the Secretary of War, in his discretion, to refuse such application.

"The object of the bill is to provide for cases where the troops are at such a great distance that thirty days do not give them time to get home and return again." [Italics supplied.] (Cong.Rec. 44th Cong., 1st Sess., Vol. 4, Part 3, p. 2340.)

The bill was tabled at that time, and on June 29, 1876, Senator Logan again moved that the bill be called up. The Congressional Record of that date records the proceedings as follows:

"The motion was agreed to; and the bill (H.R. No. 1692) to amend an act approved May 8, 1874, in regard to leave of absence of Army officers, was considered as in Committee of the Whole. It proposes to amend the act approved May 8, 1874, in regard to leave of absence of Army officers, so that *all* officers on duty *shall be allowed* sixty days' leave of absence without deduction of pay or allowance, if the same be taken once in two years; and that the leave of absence may be extended to three months if taken once only in three years, or four months if taken only once in four years.

"The Committee on Military Affairs proposed to amend the bill in line 6, after the word "allowed", by inserting "in the discretion of the Secretary of War."

"The amendment was agreed to." (Cong.Rec. 44th Cong., 1st Sess.,

Vol. 4, Part 5, pp. 4231–4232) [Italics supplied.]

The amendment was accepted by the House and the bill was enacted.

We think that the above history, particularly the reference to "in case of emergency", supports our conclusion that the insertion of the words "in the discretion of the Secretary" was intended to confer upon the Secretary only the authority to control when leave might be taken and not whether it might be taken at all.

Congress did not express itself again on the matter of officers' leave until the enactment of the Armed Forces Leave Act of August 9, 1946, 60 Stat. 963, 37 U.S.C.A. § 31a. While this act was the first comprehensive armed forces leave act, one of the primary purposes of the act was to place enlisted personnel on a basis of equality with commissioned officers with respect to leave. The Senate Report which accompanied this act begins as follows:

"Many bills have been introduced during the Seventy-ninth Congress, in both the Senate and the House, having for their purpose the granting of leave to the enlisted men of the armed forces on a basis similar to the leave granted to officers. The sentiment has been widespread, both in the Congress and in the country, that justice and fairness require equality of treatment of officers and enlisted men with respect to their leave rights and benefits.

"Under the provisions of the act of May 8, 1874 (18 Stat. 43), as amended by the act of July 29, 1876 (19 Stat. 102), Army officers *have been entitled* to 1 month's leave of absence a year, without deduction of pay or allowances, and have been permitted to accumulate unused portion of such leave not to exceed a total of 4 months.

\* \* \* \* \* \*

"It has been the policy of both the War and Navy Departments to permit officers *to take advantage of*

*accumulated leave* upon relief from active duty. This means that an officer, although for practical purposes relieved from active duty, actually remains upon the Government pay roll for a period of time equivalent to the amount of leave that has accumulated to his credit.

"There is no comparable law on the subject of leave or furlough time for enlisted personnel. It has been the policy of the War Department, nevertheless, to grant enlisted personnel furlough time not to exceed 30 days a year. *Because of the lack of specific statutory authority, however, unused portions of such furloughs do not accumulate to the credit of enlisted personnel as in the case of officers.*" Sen. Rep. No. 1704, 79th Cong., 2nd Sess., U.S. Code Cong. Service, p. 1342. [Italics supplied.]

In 1947 the 1946 Act was amended to provide that compensation for unused leave was to be by lump sum payments in cash rather than by Government bonds as provided in the original act. 61 Stat. 510, 37 U.S.C.A. § 35.

A review of the legislative history of the leave acts from 1874 to date leads us to the conclusion that under those acts the granting of leave was not a discretionary matter. The 1874 act with its phrase "shall be allowed" certainly speaks in terms of an entitlement. The 1876 statute contained the same language and in addition extended its provisions to *all* officers on active duty. The phrase "in the discretion of the Secretary" added in 1876 did not, in our opinion, diminish that entitlement to leave but only authorized the secretary involved to use his discretion as to the time when leave might be taken.

It is not questioned by defendant that under the terms of the 1946 Armed Forces Leave Act, both officers and enlisted personnel are entitled, as a matter of right, to the leave provided for therein. Yet in passing that legislation, Congress believed that it was granting to enlisted men leave which officers had been enjoying as a matter of right under the acts of 1874 and 1876. There is no indication that Congress supposed it was granting to officers in 1946 something which they did not already have insofar as their entitlement to leave was concerned, under existing law. It is also significant on this point, that Congress made the 1946 Act retroactive in its application to enlisted personnel, but did not do so with respect to officers whom they obviously thought already had an absolute right to leave under prior statutes.

■ We are of the opinion that the language of the leave laws and their legislative histories, indicates that Congress intended to and in fact did grant an absolute right to leave, first to officers, and later to enlisted personnel, of the armed forces, and that it left to the discretion of the various service secretaries only the matter of the time when such leave might be taken. Accordingly, plaintiff herein was entitled to be granted the four months unused accumulated leave standing to his credit, before being placed on the retired list.

At the time of plaintiff's separation, the statute did not permit lump sum payments for accumulated unused leave standing to the credit of an officer. Accordingly, officers were permitted to take such unused leave as terminal leave with active duty pay and allowances, and the official date of separation corresponded to the date on which the leave expired. Since plaintiff was and is entitled to the accumulated leave of four months which was unused and standing to his credit at the time of his separation in September, 1944, the date of his retirement should have been fixed as of February 1, 1945, and plaintiff must be considered as having been in an active duty status for pay purposes from September 1, 1944 to February 1, 1945. Inasmuch as plaintiff completed 24 years of active service on November 27, 1944, his active

duty pay from that date to February 1, 1945, should be that of a lieutenant commander with more than 24 years of service, and his retired pay beginning on February 1, 1945, should be based on the pay of a lieutenant commander with more than 24 years of active service.

Plaintiff is entitled to recover on all three claims sued on and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c).

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.