Casper H. EICKS

v.

**UNITED STATES.**

No. 457–55.

United States Court of Claims.

April 8, 1959.

446

Guy Emery, Washington, D. C., for plaintiff. Emery & Wood, Washington, D. C., were on the briefs.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub for defendant.

REED, Justice (Retired), sitting by designation.

Plaintiff, a commissioned officer of the Navy, was retired for disability as of May 1, 1944, after service from August 20, 1917. The retirement order was approved by the President April 28, 1944. Plaintiff received notice of the President's action May 14, 1944, and that he had been placed on the retired list as of May 1, 1944.

Prior to his retirement as of May 1, he had been hospitalized by Navy orders, detaching him from duty and ordering him after medical treatment to proceed to his home pending final retirement. The orders referred to were first delivered to plaintiff on May 1, 1944, at the hospital. He was thereupon discharged from treatment and directed to comply with these orders.

On May 12, 1944, plaintiff applied for his accrued leave of three months and twenty-five days. The reason for the request was that then the use of the accrued leave would have postponed plaintiff's retirement date with service pay higher than retirement pay and would have given plaintiff the advantage of longer service and consequently an increased base upon which to apply his retirement percentage of service pay. This request was denied by letter of May 18, 1944, on the ground that his retirement had become effective May 1, 1944.

On July 12, 1954, the plaintiff filed an application with the Navy Board for Correction of Navy Records for a correction so as to show that he continued on active duty through August 30, 1944. This would result from the allowance of his unused leave during active service. Such a Board for correction of military records was set up under the Legislative Reorganization Act of 1946, § 207, 60 Stat. 837.[1]

---

1. "Sec. 207. The Secretary of War, the Secretary of the Navy, and the Secretary of the Treasury with respect to the Coast Guard, respectively, under procedures set up by them, and acting through boards of civilian officers or employees of their respective departments, are authorized to correct any military or naval record where in their judgment such action is necessary to correct an error or to remove an injustice."

This was amended, 65 Stat. 655, and repealed on August 10, 1956, by the codification of Title 10 of the United States Code, 70A Stat. 675. The substance was reenacted by the same Act, § 1552, Title 10, U.S.Code. None of these changes are considered material by us for this case.

The Board, on the above detailed facts which for our purposes are admitted by the Government, recommended action as set out in the note below.[2] There was a minority report pointing out that the plaintiff could have been retired on January 1, 1944, as the retirement proceedings had been in the Office of the Judge Advocate General since December 27, 1943, and could have been approved by the President before the end of the year. This would have resulted in retirement January 1, 1944, the first of the month succeeding the order.[3] It stated that in accordance with an arrangement then in effect the Chief of Naval Personnel recommended delaying the submission of the Retiring Board proceedings to the President until April. This was done. The result was retirement May 1, 1944, "thus providing for four months of active duty with full pay and allowances to offset" the accumulated leave. The minority position was supported by the Judge Advocate General on the same grounds. The Secretary of the Navy on October 5, 1955, disapproved the recommendation of the Board and this petition followed Board notice to plaintiff that correction was denied.

Plaintiff avers the action of the Secretary in disapproving the Board decision, thus refusing correction of plaintiff's record as requested, was arbitrary, capricious and contrary to law. He seeks active duty pay and allowances from May 1 through August 30, 1944, less his retired pay for that period and also differences in retirement pay for subsequent periods through September 30, 1949, because of length of service, all amounting to about $3300, subject to computation by the General Accounting Office.[4] He asserts his right to recover was established by the said findings of the Board. As the Secretary, under the statute, has authority to correct a record acting through the civilian board, we cannot conclude that the finding of the Board compels the correction. We do think, as to record correction, that the controlling issue is whether the Secretary's action in disapproving was arbitrary and capricious. If it was, the record should have been corrected.

■ The Government pleads this court's six-year statute of limitation as a bar to any recovery for the period between plaintiff's retirement and September 30, 1949.[5] It has not briefed its position. This suit was filed December 2, 1955. The notice of the Board that it had been determined that no change, correction or modification would be made

---

2. "3g. that in view of the foregoing findings, the Board further finds that the failure of naval authorities to modify Petitioner's release orders to include his accumulated leave constitutes an injustice which warrants corrective action and the Board now finds that Petitioner should have been retained in an active duty status until 1 September 1944 and transferred to the retired list on that date.

"Decision:

"It is the decision of this Board that the naval record of Casper H. Eicks, LCDR, USN (Ret.) 57025 be corrected where appropriate as follows:

"A. That he was not transferred to the retired list by reason of physical disability on 1 May 1944.

"B. That he was detached on 1 May 1944, granted three months, twenty-five days accrued leave and transferred to the retired list by reason of physical disability effective 1 September 1944.

"Recommendation:

"The Board recommends that the Secretary of the Navy determine that the highest grade and rank in which Casper H. Eicks, LCDR, USN (Ret.) 57025 satisfactorily served under a temporary appointment be that of LCDR and that he be advanced to this highest grade and rank from the date of his retirement, 1 September 1944, and that the Department of the Navy pay to Casper H. Eicks, LCDR, USN (Ret.), 57025, or other proper party or parties, as a result of the foregoing correction of naval record, all monies lawfully found to be due."

3. Uniform Retirement Act, 5 U.S.C.A. § 47a.

4. After September 30, 1949, plaintiff was compensated under the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 231 et seq.

5. 28 U.S.C. §§ 2401, 2501.

on plaintiff's July 12, 1954, application reached plaintiff October 18, 1955. This suit seeks recovery of salary for periods more than six years prior to its institution, but the right to recover is not set up as a salary debt but arises, it is claimed, from the arbitrary and capricious action of the Secretary of the Navy in refusing correction of plaintiff's record. Under the earliest provision for the correction of military records, 60 Stat. 837, § 207, there was no express limitation as to when the Board proceeding should be begun. In the 1951 amendment, a member of the armed forces had three years after discovery of the error or injustice, or ten years after the enactment of the amendment, "whichever be the later," to bring proceedings before the Board. 65 Stat. 655. This was the act in effect when plaintiff filed his request for correction before the Board. At present the limiting time is three years after discovery of the injustice or October 26, 1961, "whichever is later." The Board, since 65 Stat. 655, may excuse a failure to file in time in the interest of justice.[6] We think this present cause of action arose on the refusal of the Board, after the Secretary's disapproval, to correct plaintiff's record.[7] It was therefore in time.

■ It is within the jurisdiction of this court to correct the action of the Board if it results from the Secretary's arbitrary disapproval of the Board's decision and recommendation. If the contentions of plaintiff are correct, he is entitled to back pay from the United States of over $3,000. This action seeks the recovery of that amount and the right to recover depends on whether the refusal to correct the record was arbitrary. Friedman v. United States, note 7, supra, 158 F.Supp. at page 375, and cases cited, particularly Furlong v. United States, 146 F.Supp. 823, 152 F.Supp.

238, 138 Ct.Cl. 843. In the Friedman case this court pointed out the legislative history that governed our interpretation of the congressional purpose to allow this court to enter judgment for pay withheld by an arbitrary failure to correct a military record, but not to compel "alteration or correction of an official military record." 158 F.Supp. at page 376. When Congress said that rulings of Correction Boards should "be final and conclusive on all officers of the Government except when procured by means of fraud" (65 Stat. 655), it would overturn much of our thinking on justice to say that those words were intended to bar courts from awarding pay to military personnel when they had been deprived of their compensation by failure to correct their service record through arbitrary and capricious action. The correction boards were created to remedy wrongs, not to confound them.

Plaintiff's disabilities led on April 16, 1943, to an order detaching him from duty and ordering him to the Naval Hospital, Brooklyn, for observation, treatment, and a report by a board of medical survey. On April 26, 1943, Brooklyn ordered him to the Naval Hospital, St. Albans, Long Island, New York. He reported there that day. On January 27, 1944, the Chief of Naval Personnel signed an order for plaintiff to be relieved of all duty and upon discharge by St. Albans Hospital to proceed to his home and "await orders pending action on the proceedings of the Naval Retiring Board in your case." This order was sent "via Medical Officer in Command of Naval Hospital." The record does not show the reason for the delay but it does show that the order of the Chief of Personnel was delivered to plaintiff May 1, 1944. Up until that date plaintiff had not received notice of his retirement. The notice that he had been retired as of May

6. 70A Stat. 117, § 1552(b).

7. Uhley v. United States, 121 F.Supp. 674, 128 Ct.Cl. 608; id., 147 F.Supp. 497, 137 Ct.Cl. 275; Furlong v. United States, 146 F.Supp. 823, 152 F.Supp. 238, 138 Ct.Cl. 843; Friedman v. United States, Ct.Cl., 158 F.Supp. 364, 374. Cf. Rosnick v. United States, 132 F.Supp. 478, 132 Ct.Cl. 1, 6; Capps v. United States, 137 F.Supp. 721, 133 Ct.Cl. 811; Kearney v. United States, Ct.Cl., 156 F.Supp. 928.

1, 1944, was received May 14, 1944, by letter from Acting Secretary of the Navy Forrestal, dated May 10, 1944. On May 12, plaintiff had applied for his accumulated leave. This was denied him under date of May 18, 1944, in these words:

"Subj: Leave of Absence, Accumulated—Request for—Prior to effective date of retirement.

"Ref: (a) Your letter of 12 May 1944.

(b) BuPers orders of 27 January 1944.

(c) SecNav letter of 10 May 1944.

"1. By reference (b) you were ordered upon discharge from treatment at the Naval Hospital, St. Albans, N. Y., to proceed home to await action of the Retiring Board. By reference (c) your retirement was effected on 1 May 1944. Your orders to proceed home and await action of Retiring Board were issued in January 1944 to enable you to have accumulated leave prior to 1 May 1944.

"2. As your retirement was effective on 1 May 1944, it is not now possible to grant you accumulated leave. By direction.

"C. L. Hansen,

"Commander, USN, Retired,

"Officer Performance Division."

The delay in discharge for the purpose of allowing time for the use of the accumulated leave is not questioned. The difficulty is that the order of January 27, 1944, was not delivered to plaintiff until May 1, too late for him to use leave after his discharge on the same day, May 1, 1944. It is just such errors or injustices that Congress intended to rectify by action of the Board of Corrections.

The Government urges that use of accumulated leave is a matter of departmental grace, not a right. Therefore, it is argued, refusal of accumulated leave is discretionary with the commanding officers. On November 6, 1957, this court in Pollard v. United States, Ct.Cl., 155 F.Supp. 954, examined this contention with care. We decided that the use of accumulated leave was a matter of right. We are asked to overrule that decision. It is now suggested that the 1874 (R.S. § 1265) and 1876 (19 Stat. 102) acts were not leave statutes but statutes that limited discretionary leave by limiting the amount of time for which an officer on leave could be paid. We think that suggestion is disposed of by the paragraph from the Pollard case quoted below.[8]

Even though the Navy Regulations in effect at the time of plaintiff's retirement asserted that leave was "a privilege and not a right," [9] its policy was to grant the accumulated leave in advance of re-

---

8. "It is not questioned by defendant that under the terms of the 1946 Armed Forces Leave Act, both officers and enlisted personnel are entitled, as a matter of right, to the leave provided for therein. Yet in passing that legislation, Congress believed that it was granting to enlisted men leave which officers had been enjoying as a matter of right under the acts of 1874 and 1876. There is no indication that Congress supposed it was granting to officers in 1946 something which they did not already have insofar as their entitlement to leave was concerned, under existing law. It is also significant on this point, that Congress made the 1946 Act retroactive in its application to enlisted personnel, but did not do so with respect to officers whom they obviously thought already had an absolute right to leave under prior statutes." 155 F.Supp. 954, 959.

9. Bureau of Naval Personnel Manual, 1942, ch. 6, Leave, C-6001(7):

"Although the Bureau believes that officers should take leave so as to benefit by mental and physical relaxation and recreation, it must be thoroughly understood that it is a privilege and not a right. Leave of absence is not an allowance. It is competent for the Secretary of the Navy to deny any or all leave. Laws under which leave of absence are regulated are not authority to grant leave, but impose restrictions with regard to pay when in the leave status."

tirement.[10] If the order of January 27, 1944, relieving plaintiff from active duty had been given him promptly, he could have asked for his accumulated leave to begin on his discharge from the hospital. It would seem under the policy of the Manual that such a request would have been granted.

It follows from our conclusion that the use of accumulated leave by Navy officers was a matter of right that officers about to be retired are entitled to such leave before retirement. The officer should have the opportunity to decide where and how he should use his leave. Plaintiff here was deprived of that right. The action of the Secretary of the Navy in refusing the correction of the record was unjustified. The correction should have been made. Plaintiff's motion for summary judgment is granted and defendant's like motion is denied. The plaintiff is entitled to recover on his claim and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge (dissenting).

I am unable to agree with the majority for this reason: Prior to the enactment of the Armed Forces Leave Act of 1946, 60 Stat. 963, 37 U.S.C.A. § 31a et seq., the granting of leave was a discretionary act of the secretary concerned. It was not until the amendment of the above act in 1947, 61 Stat. 748, that officers were entitled to be compensated for leave accrued but not taken prior to separation. Consequently, I believe the court's decision in Pollard v. United States, cited and relied on in the majority opinion, to be in error, in conflict with prior decisions of this court, and should be overruled. Scott v. United States, 107 F.Supp. 846, 123 Ct.Cl. 547; Ferrer v. United States, 140 F.Supp. 954, 132 Ct.Cl. 422.

10. Id., "(9) The Bureau endeavors to grant the accumulated leave of absence to officers in advance of retirement. In case of resignation, the same principle is applied, the date upon which resignation is effective being the last day of the leave given."