Ralph O. BROWNFIELD

v.

The UNITED STATES.

No. 501–76.

United States Court of Claims.

Dec. 13, 1978.

Byron N. Scott, Washington, D. C., atty. of record for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, KASHIWA and KUNZIG, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge.

In this military pay case the plaintiff, a retired colonel in the Air Force, challenges the refusal of the Secretary of the Air Force to accept the recommendation of the Air Force Board for the Correction of Military Records ("the Board") that plaintiff should be advanced on the retired list from colonel to brigadier general. The defendant has moved for summary judgment dismissing the petition. It contends that the suit is untimely under the statute of limitations, is barred under *res judicata* and collateral estoppel by a decision of this court dismissing an earlier suit by plaintiff, and is beyond the court's jurisdiction under the Tucker Act insofar as it is based upon the Correction Board statute.

We conclude that the statute of limitations bars plaintiff's claim and therefore find it unnecessary to reach the other contentions. We accordingly grant the motion for summary judgment and dismiss the suit as untimely.

### I.

Plaintiff was commissioned a second lieutenant in the Army Air Corps (Regular) in February 1929. Promotions regularly followed until plaintiff was appointed a brigadier general (temporary) on April 11, 1951. During his 4½ years in that grade, plaintiff's performance was rated "superior" and "above average," and he was recommended five times for promotion to permanent brigadier general and four times for promotion to temporary major general.

Plaintiff's difficulties began in 1955 when, as Deputy Commander of the Middletown Air Materiel Area (Middletown), he sold a patent he owned to a contractor who did business with Middletown. The contractor soon became plaintiff's friend, and this friendship continued despite the contractor's performance of, and continued bidding upon, various government contracts at Middletown. When two anonymous informants alleged that this contractor had given gratuities and bribes to Middletown personnel in connection with a contract he received in February 1955, the Air Force initiated an investigation which covered the contractor's relationship with plaintiff.

The investigation reports accused plaintiff of various improprieties. Based upon these reports, the plaintiff was given an "Administrative Reprimand" on September 26, 1955. Two days later the Secretary reduced plaintiff to his permanent grade of colonel, effective September 30. Plaintiff was reassigned 4 days later; he then requested retirement as a brigadier general. Under 10 U.S.C. § 8963(a) (1976), an officer is entitled to be retired at the highest temporary grade in which the Secretary determines he served "satisfactorily" for at least 6 months. In February 1957, plaintiff and others were indicted in federal court for conspiracy to defraud the government of plaintiff's impartial services. The day after the indictment, the undersecretary granted plaintiff's request for retirement, effective March 31, 1957, but refused to advance him to brigadier general on the retired list—in effect holding that plaintiff's service in that grade had not been satisfactory. Brownfield was found not guilty in his criminal trial on November 6, 1958.

In August 1958, Brownfield filed suit in this court for the difference in pay and allowances of a colonel and a brigadier general for the period of active service from his termination as brigadier general to his retirement (September 30, 1955 through March 31, 1957), and for the difference in retired pay of those ranks on a continuing basis since retirement. *Brownfield v. United States*, 148 Ct.Cl. 411 (1960). The court dismissed the petition in 1960, holding that the Secretary's discretionary determination that plaintiff had not served satisfactorily as a brigadier general, was not arbitrary or

capricious and was supported by substantial evidence.[1]

In 1961, plaintiff applied to the Air Force Board for the Correction of Military Records for "restoration of temporary grade with concomitant results." The Board denied the application on April 24, 1964. The Board, which had not held a hearing, informed plaintiff that his submission had failed to show probable error or injustice—the standard under 10 U.S.C. § 1552(a) (1976) governing the correction of military records—and that "in the absence of additional material evidence tending to show the commission of an error or injustice, no further action on your application is contemplated."

More than 9 years later, in October 1973, plaintiff filed a second application with the Board. Referring to the prior Board statement quoted above, plaintiff stated that he was "submitting additional material evidence" and requested a hearing. He asserted that newly discovered evidence not previously considered by the Board warranted further evaluation of his claim. The application included the full transcript of the criminal trial. Plaintiff again sought advancement to brigadier general on the retired list, effective upon his acquittal of the criminal charge on November 6, 1958.

After a hearing at which plaintiff and other witnesses testified, the Board in July 1975 concluded (1) that the Secretary's determination in 1957 that plaintiff's service as brigadier general was not satisfactory and that he should not be advanced on the retired list was supported by the record evidence then before the Secretary; (2) that plaintiff's subsequent acquittal on the criminal charge was not binding as to the sufficiency of the evidence in 1957; and (3) that sufficient evidence had been currently presented to demonstrate the existence of "a probable injustice," and that mercy and compassion were warranted. The Board recommended that Brownfield's records be corrected to show his advancement on the retired list to brigadier general, effective July 1, 1975.

The Assistant Secretary of the Air Force for Manpower and Reserve Affairs rejected the Board's recommendation in October 1975. He concluded that plaintiff's newly discovered evidence, by itself or in conjunction with the evidence previously considered, did not warrant the conclusion that an error or injustice existed. He noted that both the Board and this court in 1960 had concluded that the 1957 Secretarial determination was supported by the evidence, and held that the present record lacked evidence to contravene those determinations or to explain why plaintiff should be advanced on the retired list.

## II.

A. Under 28 U.S.C. § 2501 (1976), a suit in this court must be filed within 6 years after the claim upon which it is based "first accrued." This court frequently has faced the question when a claim for back pay by a military or civilian employee, based upon an allegedly improper governmental action that adversely affected him, accrues. It has developed various standards that depend upon the nature of the claim asserted and the type of adverse government action involved.

In disability retirement cases the claim accrues "on final action of a board competent to pass on eligibility for disability retirement." *Dye v. United States,* 166 Ct.Cl. 540, 543, *cert. denied sub nom. Hellner v. United States,* 379 U.S. 837, 85 S.Ct. 71, 13 L.Ed.2d 44 (1964); *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). In *Friedman* we held, adhering to our prior decisions, that where "the Correction Board is in effect reviewing a prior adverse determination by a Retiring Board or the Disability Review Board (or a refusal to convene such a board), the Cor-

---

1. Although the Secretary's decision was rendered prior to plaintiff's acquittal, the court noted that, "The fact that a petit jury acquitted plaintiff of the charge is not necessarily binding as to the sufficiency of the evidence on which the Secretary made his decision." 148 Ct.Cl. at 419.

rection Board's adverse decision does not give rise to a new cause of action"; but that "where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision." 159 Ct.Cl. at 25, 310 F.2d at 396. In wrongful discharge cases, the claim arises on the date of discharge. *Homcy v. United States,* 210 Ct.Cl. 332, 336, 536 F.2d 360, 363 (1976), *cert. denied,* 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976); *Ramsey v. United States,* 215 Ct.Cl. 1042 (1978).

Although the court has not decided when a claim based upon an improper failure to advance an officer on the retired list accrues, the principles announced in the prior cases provide a guideline for our decision. The common thread running through those decisions is that the claim first accrues when the government official or agency responsible for determining the plaintiff's rights takes final action that is dispositive of his claim. It is thus necessary for us to determine when plaintiff's claim that he was entitled to be advanced on the retired list to brigadier general was first finally rejected.

■ In the present case, the basic wrong of which plaintiff complains is the refusal of the Secretary in 1957 to advance him on the retired list to brigadier general. In 10 U.S.C. § 8963(a), Congress gave the Secretary the authority to make that determination on the basis of his conclusion whether the officer performed satisfactorily for at least 6 months at the higher temporary grade to which the officer sought advancement on the retired list. The Secretary determined in 1957 that the plaintiff was not entitled to be so advanced, and plaintiff's claim that the Secretary improperly so determined accrued at that time. *Friedman v. United States, supra.* 159 Ct.Cl. at 8, 310 F.2d at 385–86. Moreover, even if the statute of limitations were tolled during the pendency of the criminal proceedings against plaintiff, the statute began to run on November 6, 1958, when plaintiff was acquitted.

If, contrary to the foregoing analysis, the administrative proceedings on plaintiff's claim were not completed until plaintiff had invoked the jurisdiction of the Correction Board in 1961, an extremely dubious assumption (*see Friedman, supra,* 159 Ct.Cl. at 17–18, 310 F.2d at 391–92), plaintiff's present suit still would be untimely. That Correction Board proceeding was terminated in April 1964, when the Board denied relief. The present suit in this court was not filed until December 10, 1976, more than 12 years after the Correction Board acted.

B. Plaintiff, however, contends that when in 1975 the second Correction Board found that his record should be changed to correct an injustice, that ruling extended his time for filing the present suit for another 6 years. (If taken at face value, this theory of his claim is difficult to understand, since plaintiff suffered no injury from the Board's favorable recommendation; his injury resulted from the Assistant Secretary's refusal to follow it.) Since the second application to the Correction Board was not filed within 6 years after the first Board denied relief, plaintiff's theory must be either that his claim had not fully matured prior to the second Board proceeding (he does not contend that the first Board decision was not a final one), or that the refusal of relief created a new claim. Neither contention is valid.

1. Plaintiff asserted the same basic claim before both Boards: that the Secretary improperly refused to advance him to brigadier general on the retired list. He sought basically the same relief in both proceedings: promotion to brigadier general as of 1955 or 1957. Before each Board he contended that his acquittal in the criminal case vitiated the basis of the Secretary's prior denial of promotion. As plaintiff indicated at oral argument, the primary difference between the two proceedings was that the second Board, unlike the first, had the record of the criminal trial before it and held a hearing. In his second application to the Board, plaintiff acknowledged that he

was asserting the same claim that he had previously raised, since he stated that he was "submitting additional material evidence," as the first Board had told him 9 years earlier he could do.

■ Plaintiff's claim had fully matured when the first Board rejected it in 1964. Although petitioner presented evidence to the second Board that the first Board had not considered,[2] that fact did not show that the claim was not fully ripe for determination when it was presented and denied more than 10 years earlier. The 1973 Board was not "the first board to consider or determine finally the claimant's eligibility for" (*Friedman v. United States, supra,* 159 Ct.Cl. at 25, 310 F.2d at 396) advancement on the retired list; the 1964 Board considered and rejected that claim. Plaintiff's renewed application to the second Correction Board in 1973 was but an attempt to secure discretionary relief long after his claim had been finally rejected. As such, it did not extend his time for filing suit. *Id.* at 11–12, 310 F.2d at 387.

2. Plaintiff, however, argues that in the present suit he is not challenging the action of the Secretary in 1955 and 1957 in refusing to advance him on the retired list. He states that here he is urging only that the Secretary acted arbitrarily and capriciously in 1975 in rejecting the recommendation of the second Correction Board that such action should be taken to correct an injustice that the Board found existed at that time. According to plaintiff that is the only issue now before this court, and that issue did arise until 1975.

■ The flaw in this theory is that before both Boards plaintiff asserted the same basic claim: that because plaintiff was acquitted in the criminal case, the Secretary should change his earlier decision refusing to advance plaintiff on the retired list to brigadier general. To be sure, the second Board had before it evidence not available to the first Board—primarily the record in the criminal case—and the two Boards made different recommendations to the Secretary concerning correction of plaintiff's record. But the result of each proceeding was the same: the Secretary concluded that advancement of plaintiff on the retired list was not called for to correct an error or an injustice. *Cf. Ramsey v. United States,* supra, 215 Ct.Cl. 1042 (1978). If plaintiff had prevailed on the merits of the present suit, he would obtain the same basic relief that he would have obtained had he prevailed in the first Board proceeding: advancement on the retired list to brigadier general. Plaintiff is not now seeking correction of his record retroactively to the date of his acquittal, as he sought from the first Board and initially from the second Board as well. But this modification in the relief sought does not convert a claim based on the Secretary's refusal to make the same correction in plaintiff's record that plaintiff sought but was denied a decade earlier, into a new claim that first accrued in 1975.[3]

---

**2.** Since the criminal trial had been completed more than 5 years before the first Board decision, there was no reason why plaintiff could not have filed a timely second application on the basis of the evidence he presented to the second Board. This was not newly discovered evidence that was unavailable to plaintiff until shortly before he filed the second application. Indeed, plaintiff offers no excuse for his delay other than the facts that counsel lost his voice and that it was necessary to retain new counsel.

**3.** Plaintiff's extensive reliance on *Eicks v. United States,* 145 Ct.Cl. 522, 172 F.Supp. 445, for the proposition that the Secretary's rejection of the Correction Board's recommendation creates a new cause of action, is misplaced. In *Eicks* the plaintiff had been granted disability

retirement in 1944. In 1954 he applied to the Correction Board to increase his retired pay to reflect annual leave that he should have been allowed in 1944 before his separation. The Board recommended granting relief but the Secretary disagreed. Noting that the plaintiff's right to recover depended on whether the Secretary's refusal to correct the plaintiff's record was arbitrary, the court held that the suit was timely because the "cause of action arose on the refusal of the Board, after the Secretary's disapproval, to correct plaintiff's record." 145 Ct.Cl. at 526–27, 172 F.Supp. at 448.

In *Friedman v. United States* the court stated that *Eicks* involved "implementing the favorable decision in 1944 granting the plaintiff disability retirement. The court thought it necessary to correct the plaintiff's records to show the accumulated leave (in order to compute the

Accordingly, the defendant's motion for summary judgment is granted, and the petition is dismissed.

additional pay he sought) and only the Correction Board could make the required correction." 159 Ct.Cl. at 23–24, 310 F.2d at 395 (footnote omitted). The court stated that *Eicks* and similar cases "stand not for the general proposition that any action of the Correction Board creates a new cause of action (for limitation purposes), but for [the] considerably narrower rule" noted above relating to implementation of a favorable Board decision. *Id.* at 23, 310 F.2d at 395.

In the present case, the plaintiff's suit is not seeking to implement a prior favorable decision—the 1964 Board decision was adverse—but to ground a new cause of action upon the Secretary's rejection of a favorable Board recommendation. For the reasons given in the text, that action by the Secretary did not create a new cause of action.