Robert H. BETTS

v.

UNITED STATES.

No. 140–55.

United States Court of Claims.
April 8, 1959.

---

· Paul R. Harmel, Washington, D. C., for plaintiff, Geiger, Harmel & Schuchat, Washington, D. C., on the briefs.

Paris T. Houston, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant, Edgar H. Twine, Washington, D. C., on the brief.

MADDEN, Judge.

The plaintiff sues for disability retired pay to which he claims to be entitled because he was disabled as a result of his service in the Army. There is no controversy as to the nature and extent of the plaintiff's disability. His right to recover depends upon the answers to other questions which will appear in the course of this discussion.

As an officer in the Army of the United States the plaintiff participated in the campaigns of Europe-Africa-Middle East, Normandy, Northern France, Rhineland and Central Europe in the Second World War. His decorations and awards included the Purple Heart, Legion of Merit, and Bronze Star. On November 12, 1947, he became an officer of the Regular Army.

In 1948 the plaintiff had symptoms of illness and in October of that year he was admitted to Fort Jay Station Hospital with a diagnosis of possible coronary occlusion. He was advised in writing by an officer of the hospital medical corps to limit his activities so as not to be under physical or mental pressure.

On November 16, 1948, the plaintiff tendered his resignation from the Regular Army and asked for release from active duty in the Army of the United States, in which he still held a commission. In his letter of resignation he said, *inter alia:*

"I have been found to have a heart condition that does not cause a disability at present, but I am advised by competent medical authority that I should limit my activity so as not to be under mental or physical pressure."

The Adjutant General suggested that the plaintiff might be entitled to appear before a Retiring Board, if a Disposition Board should find that his condition warranted such an appearance. In February 1949 a Disposition Board at Valley Forge General Army Hospital, after observation for coronary disease found no such disease. The hospital authorities recommended however, that the plaintiff be examined by a Dr. Stroud, a heart specialist in Philadelphia.

On March 28, 1949, the plaintiff's resignation from his Regular Army commission was accepted, to be effective April 4, and his commission in the Army of the United States was terminated, although, as to the latter commission, the

plaintiff had requested only to be relieved from active duty. About April 15, 1949, the plaintiff sent to the Surgeon General the report of Dr. Stroud which stated the doctor's conclusion that the plaintiff had coronary artery disease and may have had a small coronary infarct.

Also in April 1949 the plaintiff applied for the reinstatement of his commission in the Army of the United States. In reply the Adjutant General wrote that since the plaintiff was physically disqualified for active military service, he was not eligible for appointment in an active section of the Officers' Reserve Corps. He was, however, tendered an appointment in the Honorary Reserve which, apparently, he accepted.

In November 1949 the Veterans' Administration found that, as of the date of his separation from military service in April 1949, the plaintiff had arteriosclerotic heart disease which was service-connected and was 80% disabling, as well as a 10% disability from service-connected lumbosacral sprain.

On May 29, 1953, the plaintiff filed an application with the Army Board for the Correction of Military Records, requesting that his records be corrected to show that he was permanently incapacitated for active service at the time of his separation from the service on April 4, 1949.

The Correction Board caused the plaintiff to be sent to the U. S. Army Hospital, Fort Benning, Georgia. A Medical Board at the hospital found that the plaintiff was disabled as he claimed, and recommended that he appear before a Physical Evaluation Board. The Physical Evaluation Board made the same decision which the Medical Board had made. Upon receiving these reports the Correction Board requested the opinion of the Physical Review Council. That Council concurred in the conclusions of the two Boards.

The Correction Board thereupon, on September 16, 1954, after reviewing the opinions and findings of the two Boards, the Council and the Veterans' Administration, made formal conclusions, including the following one:

"2. That the applicant's relief from active duty on 4 April 1949, not by reason of physical disability, was and is in error and unjust."

It then made its recommendation, as follows:

"The Board Recommends:

"That all of the Department of the Army records of Robert H. Betts, be corrected to show:

"a. that he was permanently incapacitated for active service at the time of his separation from active duty, 4 April 1949, due to arteriosclerotic heart disease; that such incapacity was an incident of service in line of duty; that such incapacity was the result of an incident of service and originated in 1948; that the applicant became permanently incapacitated for active service on 4 April 1949; and

"b. that he was retained on active duty from 5 April 1949 to 30 April 1949, and retired from active duty by reason of physical disability under the provisions of Section 1251, Revised Statutes, in the grade of Lieutenant Colonel, as provided by Section 2, Public Law 101, 78th Congress."

On December 6, 1954, the Assistant Secretary of the Army denied, without comment, the plaintiff's application for the correction of his military records. On June 30, 1955, the Assistant Secretary wrote the Correction Board with regard to his denial on December 6, 1954, of the plaintiff's application. His communication was, in pertinent part, as follows:

"In the above case, I denied relief on 6 December 1954 because I could find no error or injustice in the case since at the time he resigned, he was fully aware of his physical condition, as he had been hospitalized by the Army for some months and had also consulted civilian specialists. In other words, knowing all the

facts, he elected to resign. The Board on 4 August 1954 had recommended that he be placed on the retired list because of physical disability at the time of his resignation on 4 April 1949. At the time the case was forwarded to me, the board reported that he had not received clearance, which became immaterial in view of my denial of relief.

\* \* \* \* \* \*

"I return the case for further consideration and I desire the Board's opinion as to the reason for his resignation, in particular whether it was influenced by the investigation then in progress. I do not suggest that the Board change its original findings and recommendations unless it feels impelled do so by new evidence."

Upon receipt of this communication, the Correction Board, one member dissenting, reversed its action and recommended that the plaintiff's application for the correction of his military record be denied. The Assistant Secretary followed that recommended action and repeated his previous denial of the application.

Congress, in the Legislative Reorganization Act of 1946, 60 Stat. 812, sought, among other objectives, to avoid the necessity of correcting, by private special legislation, the naturally numerous errors which occur in the making of military records. It included in the Reorganization Act section 207 which, as amended in 1951, 65 Stat. 655, 5 U.S.C. 191a, now codified as 10 U.S.C. (1952 ed. Supp. IV) 1552, authorized the Secretaries of the Armed Services to act "through boards of civilian officers or employees of their respective Departments" to correct military records "to correct an error or remove an injustice."

▇ The first question before us is the naked one, whether a Secretary, acting under this legislation, is free to reach a conclusion which is contrary to all the evidence, is contrary to the conclusion of all the boards authorized by Congress to assist the Secretary in his function of correcting records and is, some months after the decision, expressly based upon a purported reason which is utterly irrelevant. The purported reason was the fact that the plaintiff knew when he resigned from the Army that he had some heart trouble. The plaintiff knew what the Army doctors had told him, when they concluded that he had some illness which should restrict his activities but that he was not sufficiently disabled to be entitled to retirement. The purported reason for his decision given by the Assistant Secretary was no reason.

▇ A public officer, in making decisions affecting the rights of citizens, is not free to act capriciously, at least unless the legislature has in plain terms granted him that arbitrary power. A decision contrary to all the evidence, and for which, even on post audit, no reason can be given except an irrelevant reason, cannot be characterized as other than capricious. As such it deserves only to be ignored, and we ignore it. It then becomes a question whether the plaintiff shall forfeit and lose valuable rights because of the inaction of the official who had those rights in his custody or whether the court shall act upon the evidence which the official failed to act upon and, so far as it is within the power of the court, award the plaintiff his rights. We have in former decisions chosen the latter course, and we do so now. Eicks v. United States, Ct.Cl., 172 F.Supp. 445 decided this day, and the cases therein cited.

The Government raises a question of the law of the Constitution. It says that a decision awarding the plaintiff the retired pay which the statutes grant to officers in his situation would be a decision appointing the plaintiff to a commissioned office in the Army, and that the authority to make such appointments is, by the Constitution, lodged exclusively in the Executive.

▇ This court has, of course, no authority to appoint persons to public office.

It does have jurisdiction to award them money damages as compensation for violations of rights granted to them by statute or regulation. There is no constitutional impediment to its doing that. See Friedman v. United States, 158 F. Supp. 364, 374, 141 C.Cl. ——; Eicks v. United States, supra. What the Executive may or may not do by way of specific correction of errors or injustices which are embodied in its military records is not subject to review by this court.

The defendant's motion for a summary judgment is denied. The plaintiff's similar motion is granted and judgment is entered for the plaintiff. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur

Laramore, J., and Maris, Circuit Judge (Retired), dissented.