Nichols, Judge,
delivered the opinion of the court:
The plaintiff is a former Lieutenant Commander in the Navy (Supply Corps) whose back pay suit challenges the legality of his discharge for unsatisfactory services and the subsequent disapproval by the Secretary of the Navy of a decision by the Board of Corrections of Naval Becords which would, in effect, have cancelled his removal. The case is now in the pre-trial discovery stage, assigned to Trial Commissioner W. Ney Evans, and is before us by virtue of defendant’s request for review of the commissioner’s order denying defendant’s claim of privilege. (Buies 52(c), 55(a) (8).)
In this interlocutory stage, we restrict our recital of the facts to the bare minimum necessary for understanding the decisions which we make.
The record reflects that the plaintiff, after previous service, often rated outstanding, incurred the disapprobation of his superiors in connection with his transactions in Philippine currency. These occurred during a tour of duty in the Far East, at Subic Bay. A Board of Investigation had reported alleged misconduct on the part of plaintiff. His commanding officer made, on the basis thereof, an unsatisfactory fitness report on him, stated that he no longer trusted him, and recommended that he be transferred to other duty. However, the Pacific Fleet Commander endorsed comment favorable to Weiss on the report of the Board. Ultimately, plaintiff received a reprimand on account of only a single transaction, all the others being eliminated by the Navy JAG. Another subsequent fitness report was also “essentially adverse” in connection with plaintiff’s later performance of sea duty, accusing him of psychosomatic illness incurred whenever the ship was about to leave port.
*866 In accordance with Navy law, plaintiff’s name came before a Selection Board of Supply Officers, on a list of persons eligible for promotion. The Board, following usual procedure, divided the list into 3 categories: 'those who should be promoted, those who should remain in their then rank, and those who should be separated with honorable discharge because their services had been unsatisfactory and would probably be unsatisfactory at the higher grade. Plaintiff and another were in the third category. The President approved the list and plaintiff’s separation followed. His application to the Board For Correction of Naval Records (established under 10 U.S.C. 1652) and the Board’s recommendation favorable to him were predicated upon the belief that plaintiff’s service record placed before the Selection Board had been unfairly weighted by inclusion of documents unfavorable to him, while it did not get to see other documents in his record which would) have largely neutralized the bad impression given. Adverse fitness reports were considered, as it found, although plaintiff had had no opportunity to comment as regulations required. Plaintiff’s official Navy file, as it now is, does not entirely establish the facts because the Navy admits that some documents now in it may have been added at times later than their dates of origination. The Secretary of the Navy disapproved the recommendation of the Board For Correction of Naval Records because he thought that the Board had failed to give proper weight to substantial indications of impropriety in the peso transactions.
The court is now in possession of much of the administrative file and no obstacle is offered to discovery of the remainder, except for two documents which the Navy claims are privileged. It says they are work products of lawyers or communications of an advisory nature from subordinates to superiors. The commissioner has ordered the defense to produce these documents for inspection in camera.
At this point we would interject that the Navy has not permitted the Department of Justice Trial Counsel, representing it in this court, to examine the alleged privileged documents. This is only natural, if not indeed unavoidable, as a response to the view of the commissioner expressed in this, and another case, that a party waives a claim of privi *867 lege if be permits bis trial counsel to examine the document involved.
Tbe only authority relied on for sucb a rule is Fireman's Fund Indemnity Co. v. United States, 103 F. Supp. 915 (N.D. Fla., 1952), aff’d 211 F. 2d 773 (C.A. 5th, 1954), cert. denied 348 U.S. 855.[1] The privilege there was claimed for witnesses statements taken by government investigators in the course of preparation for trial. The court thought it tactically unfair for the government to possess and use such papers while withholding them from the adversary. But cf. Hickman v. Taylor, 329 U.S. 495 (1947). The court in Fireman's Fund did not cite any pertinent authority. Moreover, the privilege herein is not claimed for witnesses’ statements. No comparable tactical inequity suggests itself in this case. If we oblige government counsel to wear blindfolds, we blindfold ourselves also. Well considered court decisions will not result from efforts of ignorant attorneys. Ever since 1933 the policy of the United States has been that the Department of Justice is in sole charge of all litigation to which the Government is a party. The alleged waiver rule erects a wall between government counsel and the Departments which are their clients, and causes decisions which are vital to the management of litigation to be made on the wrong side of the wall. In case of a possible claim of privilege by a plaintiff, not having house counsel, like the Departments, it might work to deny him any legal advice at all. Accordingly, we will not in the future regard any party to litigation in this court as having waived a claim that a document is privileged by reason of allowing his trial counsel to have access to such document.
We now consider the alleged privileged documents in their relationship to the litigation before us. We refer to legal issues we expect to arise, not for the purpose of deciding them prematurely, but to show how the documents are or may be related to the case. First comes the document which we will continue to call the Walkup summary. It now appears it was signed by a W. B. Smedberg, III, but we believe it is too late to change the appellation previously employed in the countless papers on file in this litigation. Since the *868 request for review the defendant has furnished an affidavit by Captain Walkup, U.S.N.R., which was not before the commissioner. Captain Walkup also gave an oral deposition. Plaintiff does not seriously challenge Captain Walkup’s veracity, so we must and do assume that what he tells us is true. It appears that in 1963 he was on active duty in the Bureau of Naval Personnel and in performing his duties he prepared or caused to be prepared a document to accompany the report of the Selection Board, above mentioned. It commented on the service records of Lt. Commander Weiss and another officer whose services were also found unsatisfactory in the same report. It embodied the report of the officer’s service record which was required to be before the board, it purported to be a brief of the probable reasons for the subject action, it referred to the record of the officer’s duties as reflected by his duty assignments and major fitness reports, but it did not purport to be the complete record nor was it a detailed analysis of every fact in the record. It did not contain any information, Captain Walkup says, which would serve the object of the plaintiff in establishing whether the Selection Board saw the favorable endorsements or only the investigation report damning Weiss in connection with his Philippine peso transactions. The purpose of the document and its actual use was to go forward to other and higher Navy authority, and ultimately to the President, to inform them as to the service records of the officers to be separated. The actual documents considered by the Selection Board did not go forward with its Report and higher authority would be dependent on the Walkup summary for information as to the officer’s records, there being no fact findings in the Report itself, except the ultimate conclusion of unsatisfactory service.
The statutory authority for discharging officers for unsatisfactory performance of duty is found in 10 U.S.C. Secs. 5708(f) and 6384, which require that boards for promotion of officers shall report the names of officers whose service records indicated unsatisfactory performance of duty and who would not perform satisfactorily in a higher grade. The boards referred to include, under Section 5702 (10 U.S.C. § 5702) boards for promotion and for continuation on the *869 active list of staff corps officers such as supply officers. Section 5706(11) (10 U.S.C. § 5706) provides that the Secretary of the Navy shall furnish to the selection boards “the records of all officers whose names are furnished to the board.” It would, therefore, appear arguable that the separation of an officer was not legal if the “record” was substantially incomplete or misleading, at least insofar as the defect stemmed from failure to furnish documents actually in existence and pertinent to the officer’s performance, or if the “record” included adverse fitness reports on which opportunity to comment had not been afforded the officer. According to Section 5710 (10 U.S.C. § 5710) the reports of selection boards, such as those here involved, are to be submitted to the President for his approval or disapproval. While the question may not be entirely free from doubt, we conclude that this requirement of submission includes not only recommendations for promotion or retention on the active list at the extant rank, but also the naming of officers whose services the board has found unsatisfactory. As a practical matter the practice has been that the entire report of each board goes along to the President and this administrative construction of the law must resolve any possible ambiguity. It might well follow, we think, that the President would have to have before him whatever information as to the record of an officer, who was up for promotion, was presented to the hoard. Otherwise, he would have no basis for approval or disapproval.
The Walkup summary, notwithstanding our full acceptance of what Captain Walkup says it does and does not contain, nevertheless appears to be an exhibit which will be utterly indispensable to the adjudication of this case on the merits. If it does not tell us exactly what documents were before the Selection Board, whatever indication it does furnish will apparently be the only information we will have, except in the unlikely event that some Board member could be found having personal recollection, and except for certain admissions made to the Board For Correction of Naval Records. We know from depositions that the applicable regulations and prescribed procedures of the Navy were not so definite and precise that the presumption *870 of regularity in the performance of duty will tell us, without more, what documents were before the Board and, so far' as concerns the President’s approval, we know that the Walkup summary was Lt. Commander Weiss’ “record” and that- there was no other.
The Secretary of the Navy says the document is staff advice of a subordinate to a superior, and no doubt it is. Kaiser Aluminum & Chemical Corp. v. United States, 141 Ct. Cl. 38, 157 F. Supp. 939 (1958). However, before we allowed the claim of privilege in that case we also considered whether it was necessary to obtain the document to avoid a miscarriage of justice. We held that it was not in the case then at bar, and accordingly the claim of privilege was successful. Here we have the opposite side of the coin. We are not concerned with military and diplomatic secrets, which are in a class by themselves. The privilege here is not absolute and must yield to compelling necessity. The court, through one of its judges, offered the Government the opportunity to save the privilege by opening up other means for the court to ascertain the facts it had to have. The Government endeavored to comply with this suggestion but we hold it has not succeeded in doing so. We think the case is such that examination in camera would provide us no further enlightenment. Accordingly, we modify the commissioner’s order respecting the Walkup summary by directing that it must be made available as .part of the administrative file in the same manner as has been employed with the remainder of said file, so far as it relates to Weiss. However, the portion that relates to another officer shall be excised or deleted.
We now turn to the other document for which privilege is claimed. This is described in an affidavit, which we take as •true, by John A. Mclntire, Esquire, a civilian consulting attorney to the Judge Advocate General of the Navy. It is a JAG opinion which was issued pursuant to request by the Under-Secretary of the Navy. The JAG made a legal analysis of the matter contained in the record in the Weiss case that was before the Board For Correction of Naval Records. His opinion included no reference or allusion to facts outside that record. It will be noted that we already *871 have that record complete.' Tlie legal analysis stated the law applicable to the facts and advised the Secretary as to the legal issues involved, the recommendations of the Board, and the legal relation of the facts of record as the JAG interpreted them, in support of the recommendations or otherwise.
The record in our possession shows that the Under-Secretary referred the favorable (to Weiss) Report of the Board For Correction of Naval Records to the JAG on July 29, 1964 for “comment or recommendation,” and Mr. Mclntire says the JAG responded on September 4th. The Secretary’s decision was signed on that same date. Mr. Mclntire cannily leaves open the possibility the JAG may have advised the Secretary to affirm the Board, but we may disregard that as too unlikely for consideration. This court has not sat for over 100 years without acquiring some judicial knowledge of how things are done in the executive branch. The files we have show a previous tentative oral opinion by the JAG that the Selection Board proceedings on Weiss were legal. The JAG final opinion afforded documentation and justification for the Secretary’s decision, which he needed and waited for.
Plaintiff’s interest in this JAG opinion arises from the fact, as stipulated, that the JAG is a uniformed officer on active duty. Our decision, Proper v. United States, 139 Ct. Cl. 511, 154 F. Supp. 317 (1957), is arguably a precedent that a service Secretary cannot lawfully reject and overturn the recommendations of a Board For Correction of Military Records, in light of a recommendation by a military officer. We construe the Mclntire affidavit, with other records supplied us, as an admission against interest by the defendant that the Secretary ,of the Navy had resorted to the type of advice which can be argued to be within the Proper case. Therefore, the only issue remaining as to that aspect is whether Proper, a 3 to 2 decision, should be followed in this case. We will expect the parties to brief andj argue the question in future proceedings. Construing the Mclntire affidavit, as we do, it is apparent that in this case the Navy has furnished a substitute means for the plaintiff to prove what he was seeking to prove. The JAG opinion would normally be considered *872 privileged and here we see no necessity for holding otherwise. Accordingly, we modify the commissioner’s order by eliminating any requirement that the JAG opinion be produced for examination m camera or otherwise.
It is so ordered.

 4 Moore, Federal Practice (2d Ed. 1966) 1625, states and quotes from Fireman’s Fund but does not approve it or show that it has been followed.