Richard A. **WEISS**

v.

The **UNITED STATES.**

No. 205-65.

United States Court of Claims.
March 14, 1969.

Penrose Lucas Albright, Arlington, Va., attorney of record, for plaintiff, Mason, Mason & Albright, Arlington, Va., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

NICHOLS, Judge.

Plaintiff, a former Navy Lieutenant Commander in the Supply Corps, is challenging his honorable discharge which resulted from a Selection Board's finding of unsatisfactory performance of duty and also the Under Secretary of the Navy's reversal of a decision of the Board for the Correction of Naval Records which would have revoked his discharge.

Plaintiff had over 17 years of service with the Navy at the time of his discharge in 1964. He had served during World War II, had returned to active duty during the Korean War and had remained on active duty in the Navy thereafter, transferring to the Regular Navy in 1955. Until 1958 his fitness reports are stated, apparently with some exaggeration, to have all been outstanding. At that time he was stationed at the United States Naval Base, Subic Bay in the Philippines. While there he had been investigated for alleged participation in improper currency transactions, Black Market operations in Philippine pesos. A one-man Board of Investigation was convened to examine plaintiff's conduct. It found that he had violated Navy regulations on various occasions by exchanging or attempting to exchange personal funds in Philippine pesos (which were found to be improperly acquired) for official funds in United States currency or Military Payment certificates. The report of the Board was forwarded together with recommendations for adverse action but when it reached the Commander in Chief, Pacific Fleet, he indicated on an endorsement to the report his strong disapproval of the manner in which the investigation was conducted. The Board record consisted primarily of unsworn *ex parte* statements and the Commander in Chief, Pacific Fleet noted that, while there was ample justification for doing the whole thing over, he felt that justice could be accomplished by issuing a letter of reprimand for the only charge which he thought had been proved by competent evidence. The Judge Advocate General of the Navy (hereinafter JAG) concur-

red in another endorsement to the report with this characterization of the investigation, and with the action which was taken. In their position they both overlooked, or at least did not mention, the potential effect of the investigation and of the reprimand in subsequent Selection Board proceedings. The report of the Board of Investigation was not included in plaintiff's personnel file but copies of the letter of reprimand and an unsatisfactory fitness report based on the investigation were included. Plaintiff was given an opportunity to and did present a lengthy statement to rebut his fitness report and this material was also included in his personnel file.

Plaintiff's subsequent fitness reports were favorable, with the exception of one in 1963 by Captain Brown which, among other things, indicated that plaintiff might be a hypochondriac or malingerer. Plaintiff was sent a copy of the report in accordance with Navy Regulations which require that adverse fitness reports be submitted to an officer for his comment. 32 C.F.R. § 719.202.

Shortly after the issuance of the Brown fitness report, and before plaintiff had an opportunity to respond to it, a Navy Selection Board met to consider the promotion of Supply Corps Lieutenant Commanders to Commander. The Board obtained and considered the Brown report. It adjourned and reported, along with its recommendations for promotion, and retention in rank, that in its opinion plaintiff and one other had performed unsatisfactorily as Lieutenant Commanders and would perform unsatisfactorily in a higher grade. 10 U.S.C. § 6384 adds this to the Board's other duties. This meant that plaintiff would have to be discharged under 10 U.S.C. § 5708(f), and he was in due course.

Plaintiff applied to the Board for the Correction of Naval Records (hereinafter BCNR) which recommended that his records be corrected to reflect that he was not reported unsatisfactory by the Selection Board and that the letter of reprimand and the adverse fitness report relating to his conduct in the Philippines

be removed from his record. The BCNR's findings and decision were sent to the Under Secretary of the Navy who overruled the BCNR and upheld the plaintiff's discharge.

This case was before us earlier to review our trial commissioner's pre-trial discovery order denying defendant's claim of privilege for two Navy Department documents, Weiss v. United States, 180 Ct.Cl. 863 (1967). We upheld the claim of privilege for one of the documents; the other document has now been revealed; the facts we deem pertinent are not substantially in dispute; and the case is before us on cross motions for summary judgment. For reasons to be developed, plaintiff's motion for summary judgment is granted and defendant's cross motion is denied.

■ The issue before us is whether the action of the Under Secretary of the Navy in overruling the findings and recommendations of the BCNR was arbitrary and capricious and thus subject to reversal. We think that it was. It is well established that it is within our jurisdiction to review and, in the appropriate case, reverse a decision of a Service Secretary which arbitrarily reverses a correction board's decision and findings. Hertzog v. United States, 167 Ct. Cl. 377, 384–385 (1964); Eicks v. United States, 172 F.Supp. 445, 145 Ct.Cl. 522, 527 (1959).

The BCNR found that the material included in the record considered by the Selection Board was unduly prejudicial to plaintiff. It also found that the Subic Bay offense for which the letter of reprimand had been issued was refuted by the record before it and that retention of the letter of reprimand and other documents relating to the investigation was an injustice to the plaintiff.

■ 10 U.S.C. § 5706 provides that a Selection Board be furnished "the records of all officers whose names are furnished to the board." The Congressional purpose would dictate that the "record" required to be furnished under that section be complete and not misleading.

The plaintiff's record contained the letter of reprimand concerning the Subic Bay investigation and also the adverse fitness report covering that period. It also included a letter from plaintiff's superior at Subic Bay requesting his transfer and that letter contained references to plaintiff's allegedly improper currency transactions. The complete Board of Investigation report, as noted earlier, was not made a part of plaintiff's record, and thus it was not before the Selection Board. A summary of plaintiff's record before the Selection Board was made by a Captain Walkup, and this summary was to accompany the Selection Board's recommendations which were sent to the Secretary of the Navy and on to the President, and it purported to be a "brief of the probable reasons for the subject action." At the pre-trial discovery stage of this case privilege was claimed for this summary. The claim was denied in our earlier *Weiss* opinion as we saw the document as indispensable to shed some light on the uncertainty as to what materials were actually before the Selection Board. The summary does not list what documents were before the Board and there is no mention of the endorsements disapproving the investigation, but the summary does state that Weiss

> apparently engaged in illicit dealings involving Philippine currency, for his own gain, and induced other disbursing officers, junior to himself, to violate provisions of the Comptroller Manual * * *.

Captain Walkup probably got his information from the unfavorable fitness report and was not aware that the "illicit dealings" had simmered down to but one. This along with the conceded fact that plaintiff's record did not contain the Board of Investigation Report with its endorsements would seem to indicate that the Selection Board itself did not know of the extent to which the investigation was discredited. It is admitted that plaintiff's record did not include his comments on the Brown fitness report as he was unable to respond to it before the Selection Board adjourned.

■ The defendant argues that even if plaintiff's response to the Brown report and the endorsements were not before the Selection Board, he was not prejudiced as the Board was aware of his intention to respond and therefore would disregard the report, and his side of the Subic Bay story was before the Selection Board in the form of his rebuttal to the unsatisfactory fitness report covering that period. The rebuttal in question appears, however, to have been written for the eyes of one who already had before him all other pertinent documents. The disapproving endorsements of disinterested flag rank officers might well have carried more weight with the Selection Board in evaluating the adverse effects of the Subic Bay affair than would Weiss's rebuttal, which must have been taken as self-serving. Also the fact that the Selection Board was aware that plaintiff planned to respond does not indicate that the Selection Board would have disregarded the Brown fitness report. A Navy regulation found in 32 C.F.R. § 719.202(a) provides:

> Adverse matter shall not be placed in an officer's record without his knowledge. It shall be first referred to the officer reported upon for such official statement as he may choose to make in reply. * * *

We read this to mean that plaintiff was entitled to respond to the Brown report and until he was given a reasonable opportunity to respond or to indicate a desire not to respond, the report should not have been made part of his record.

■ Selection Boards have and must have wide discretion in performing their duties. We do not think the courts are or should be in the "promotion business." But the selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record. If a Service Secretary place before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute prescribes. We cannot endorse the way the law was complied with here, but do not find it necessary to decide the case on illegality at that stage, so we do not condemn it as the BCNR did.

Plaintiff would have us view Selection Board members as ignorant jurymen, incapable of any cerebral effort in the way of disregarding improper evidence. Defendant paints them before us as skilled trial judges, performing the above mental feat at the turn of a hand. There is no evidence herein as to what instructions if any they are given, or that anybody tells them not to consider hearsay, irrelevancies, or prejudicial material. A letter by the Chief of Naval Personnel is in our record. It claims for Selection Boards rather broad discretion in what they may consider. It says that a junior officer, no more than a young executive in private business, has any right to complain if his career depends on hearsay and gossip. This may be hard to reconcile with the statutory requirement for furnishing of a "record" but we need not evaluate it here as the case turns on other issues.

■ The BCNR considered that the inclusion of any material in the Selection Board proceeding that related to the Subic Bay investigation, in view of its "egregious deficiencies" constituted an injustice to plaintiff which could only be removed by removing from his official record all material relating thereto. It found that but for this material, plaintiff would not have been reported unsatisfactory by the Selection Board. This conclusion has the support of substantial evidence, and the matter was certainly one over which the BCNR had jurisdiction. It is not necessary to determine *de novo* if the BCNR was right, and we have said enough to show that the issues were difficult and the facts reflected at least the possibility of a substantial injustice having occurred, such as the BCNR was created to undo.

The failure of the BCNR decision to win acceptance, either in the eyes of the Secretary of the Navy, or of defense counsel here, was largely due to testimony of plaintiff before the BCNR, where he was allowed to make a statement. It was not a fully adversary proceeding, but he was questioned. Though the BCNR did not notice it, one can see in some of his transcribed answers inferential support for the findings in the original Subic Bay investigation, or at least, the Secretary did. Defendant says that the BCNR was created to relieve the Congress of handling a large class of private bills and that the BCNR's jurisdiction, therefore, is not merely to review the legality of former administrative actions, but to determine *de novo* in view of all the equities, whether it should grant relief or not. Just as a Congressional Committee would hardly have recommended correcting Weiss's record if he had made statements before it that he was guilty of the acts charged, so with the BCNR and the Secretary, reviewing the BCNR. Thus if Weiss really made damaging admissions before the BCNR, it, and the Secretary, were freed from the necessity of correcting earlier illegality. We need not review the BCNR hearing to see if plaintiff really did inadvertently admit anything, a matter as to which differences of opinion are possible, because an answer is not needed to resolve this litigation in the manner we consider proper.

The statutory charter, 10 U.S.C. § 1552 (a), of the BCNR reads as follows:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice
> \* \* \*

Here the action claimed to be arbitrary and capricious was that of an Under Secretary; as counsel say nothing about it, we presume the existence of a valid delegation of authority.

The Congress has long been concerned that regular and permanent officers might not always deal fairly with temporary officers or reservists serving among them by reason of some national emergency. Courts have given statutory provisions along such lines the fullest force. Thus, in McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902) a provision that regular officers were not competent to sit on courts martial to try "volunteer" officers was held to be jurisdictional, so that a sentence passed by a court so composed on such an officer was void notwithstanding that the accused had waived any objection to the composition of the court. The instant legislation requires to be construed in a similar spirit.

After the BCNR considered plaintiff's case, it reported its findings and opinion to the Secretary of the Navy under date of July 24. That year Saturday and Sunday fell on July 25 and 26. A file copy of its report is marked "To Sec Nav 7/29/64." On July 29, 1964, the office of the Under Secretary routed the case to the JAG for "comment or recommendations." Privilege was also claimed for the ensuing JAG opinion at the pre-trial stage of this case, and we upheld the claim. Our information concerning the JAG opinion is derived from an affidavit of John A. McIntire, Esquire, who is a civilian consulting attorney to the JAG. As we indicated in our earlier opinion, we conceded that Mr. McIntire did not expressly foreclose the possibility that the JAG might have advised the Under Secretary to affirm the BCNR's decision, but we found that possibility highly unlikely, in the circumstances. Both the JAG opinion and the Under Secretary's decision are dated September 4, 1964, which leads us to infer that the JAG advised the Under Secretary to take the position he did regarding the Weiss case and probably that the JAG actually prepared the decision for the Under Secretary's signature. The times involved simply make it impossible that the Un-

der Secretary could have obtained staff advice from any other source, of which, anyway, the apparently complete (except for the privileged document) record affords no evidence. Nor had he time to review the record himself.

We judges of the Court of Claims have been around Washington long enough to know that when a Service Secretary or Under Secretary considers a decision proposed by his staff for him to take, and rejects it in toto or in major respects, there ensues further staff work until the case is in proper shape and ready in his eyes. The staff system of decision making has been before us many times, and of course the protection of its confidentiality was the basis of the privilege recognized in this very case. There having been no time for further staff work here and none appearing, we conclude that the JAG opinion must have been accepted as submitted, and therefore it must have supported if it did not embody the action the Under Secretary took. The Navy was put on notice in our earlier opinion that our drawing of this inference was the price it had to pay for success in claiming the privilege. Had we been really uncertain what the JAG recommended, we might have dealt with his opinion as we did with the Walkup summary.

All of this is significant in light of 10 U.S.C. § 1552 which indicates that a Service Secretary shall act "through" *civilian* boards to correct records. We discussed the predecessor to § 1552 in *Proper v. United States,* 154 F.Supp. 317, 139 Ct.Cl. 511 (1957). In that case, the Secretary of the Army, upon the advice of a special assistant who was a retired army officer, chose not to correct Proper's record as recommended by the Board for the Correction of Military Records (hereinafter BCMR). The defendant argued that the function of the BCMR was merely advisory and thus the Secretary was free to accept or reject its findings as he saw fit. We rejected that position relying on the act creating the BCMR and its legislative history. The thrust of the *Proper* opinion is that a Secretary of a military department cannot overrule the recommendations of a civilian correction board on the advice of a military officer unless the findings of the board are not justified by the record before it. The defendant urges us to overrule *Proper,* though it was followed and approved in Hertzog v. United States, *supra,* one of the *Proper* dissenters delivering the majority opinion. Here we do not have *Proper's* peculiar facts. What we said there is perhaps even more appropriate to Weiss's case:

Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hands of civilians. *Proper, supra* at p. 326, 139 Ct.Cl. at p. 526.

In *Proper* the advice was given the Secretary of the Army by a retired military officer not previously involved in the case. Here the Under Secretary relied on an active duty naval officer, the JAG, who had already participated in the original alleged error or injustice, because in accordance with his statutory duty under 10 U.S.C. § 5148, he or his office had received the Selection Board report and certified to the Secretary of the Navy that the proceedings and recommendations were legal.

To say the JAG advised the action here taken is indeed an understatement. The routing and timing were such that in appearance and effect the JAG was placed in the position of a superior reviewing and revising the work product of a subordinate. The statute requires that the Secretary shall depend at least as much, some might say more, on the judgment of the Board the statute contemplates, as he does on the views of any authority or potentate not mentioned in the statute. An officer who has the predominant voice the JAG had here is one the Secretary is "acting through" and if he is uninformed he is one of those the Congress intended should not be "acted through."

It would appear that a Secretary could return a case with the recommendations and advice of the JAG to the BCNR for its reconsideration, or else the JAG could submit his views to the Board as the Chief of Naval Personnel did, before it acted. We are aware that the JAG is the legal advisor to the Secretary of the Navy, 10 U.S.C. § 5148, but he could perform his functions under that statute consistent with the Board's performing those assigned to it under 10 U.S.C. § 1552(a). It seems obvious the Congress deemed it unfair to one such as plaintiff here to have the same officer, who reviewed and approved of the original proceedings to be corrected, review the BCNR proceeding and in effect decide whether he himself was in error. The procedure, if generally followed, would deprive the requirement, that the Secretary act through civilian boards, of all real significance and effect.

In alluding to the JAG we refer to the institution, not any individual. Thus, it would make no difference to our conclusion if the officers to whom the Selection Board report was assigned for review should be shown to be entirely different persons from those who reviewed the BCNR decision. We intend, of course, no slur on the impartiality of any officer. It is the JAG as an institution the Congress meant the Secretary not to be "acting through" in the circumstances here involved.

■ Finally, a reading of Hertzog v. United States, *supra*, indicates that there may be circumstances under which a Service Secretary may be bound by the fact findings of a Correction Board. That is when they are supported by substantial evidence and there is none to the contrary. If the Secretary weighs conflicting evidence differently from the Board, the application of *Proper* is more controversial. It may be, but we do not now decide, that a Secretary may not refuse relief when a Board points out irrefutably that a mistake of law has been made, adverse to the petitioner. Or it may be he could balk nevertheless if, in view of the overall situation on the entire record, he thinks substantial injustice has not been done. Our decision here does not grapple with these questions, though they are present in the record. The result we reach is based entirely on the failure of the Navy Secretary to reach his decision "acting through" a civilian board.

In accordance with our opinion, plaintiff's motion for summary judgment is granted, defendant's cross motion is denied and judgment is entered for plaintiff with the amount of recovery to be determined in accordance with Rule 47 (c).

LARAMORE, Judge (concurring):

I concur in the result reached by the majority opinion on the basis of what I believe to be the rule announced in Proper v. United States, 154 F.Supp. 317, 139 Ct.Cl. 511 (1957). As I read that case, a majority of the court (in which I did not join) held that the Secretary cannot reverse the recommendations by the Board for Correction of Military Records on the basis of a contrary recommendation by a military officer that the Secretary agree with the minority board opinion. In the *Proper* case, two members of the BCMR dissented, but the court found that their opinion lacked any support in the record. The court also said: " * * * [W]e do not suggest that the Secretary may not overrule the recommendations of the Correction Board *where the findings of the Board are not justified by the record on which the findings were made.*" (Emphasis added, at 326, 139 Ct.Cl. at 526). The court then held that the record did not support the minority opinion and that it did support the majority opinion of the BCMR. The court held that the decision and findings of the majority were fully supported by the record and said that the Secretary, without the benefit of any additional evidence to the contrary, acted without proper authorization by ignoring those findings and denying his approval to the BCMR decision.

This case is even stronger. There is no dissenting opinion, and all of the members of the BCNR concurred in the opinion.

We do not know the contents of the JAG's recommendations to the Secretary; nor do we know whether the Secretary had any other staff comments before him; nor whether he or a member of his staff actually made a full review of the proceedings. Accepting the assumption that the JAG report was adverse to plaintiff, that *opinion* was, presumedly based on evidence that was before the BCNR. There is nothing in the record to indicate that it was based on some additional evidence which is contrary to the BCNR decision.

In Hertzog v. United States, 167 Ct. Cl. 377, 385 (1964), the court noted, with emphasis in the original text:

We say this [that the Secretary's opinion was induced and influenced by a military adviser's memorandum] because *all the evidence before the Board tended to show that plaintiff was entitled to the relief prayed for. No evidence was introduced to the contrary.*

The Secretary denied plaintiff's request for reconsideration because the findings of the Board were, in his opinion, not justified by the record. We found, however, that an examination of the record would have led him to the opposite conclusion. We held that the evidence justified the Board's findings, and therefore that this case was not within the exception provided for in our *Proper* decision (*i. e.*, where the findings are not justified by the record). In Betts v. United States, 172 F.Supp. 450, 145 Ct. Cl. 530 (1959) we also refused to permit the Secretary to reach a conclusion that was contrary to all of the evidence.

In this case, the Secretary justified his contrary conclusion on what he characterized as a misconstruction by the Board of the disapproval of the Subic Bay investigation noted by the Commander-in-Chief, U. S. Pacific Fleet. A careful reading of the Commander's comments shows that he believed that the entire investigation procedure was improper and that it included both hearsay testimony and "every available bit of malicious gossip". He then noted that one incident had been proved by competent evidence—an attempted transaction with the Disbursing Officer of the U.S.S. Lexington. The record before the BCNR, however, contains a statement by that Officer that plaintiff did not attempt to exchange his personal funds for official funds.

Under these circumstances, I think that this case falls squarely within the area proscribed by the decision in *Proper,* and I agree with the decision of the majority on that basis. Simply stated, a Secretary cannot overturn a BCNR decision when he has no additional evidence before him, and the evidence before the Board justifies only the decision reached by the Board.

DAVIS, Judge (concurring):

I join in the court's opinion but would go further and hold explicitly that the Selection Board's action was invalid because it did not have the proper statutory "record" before it. Also, I wish to reserve expressly (the court's opinion does so implicitly, I believe) the question whether a Correction Board proceeding can ever "cure" a defective Selection Board determination in the sense that the Secretary could decide—as a result of a Correction Board proceeding which was free from the defects of the Selection Board—that the officer had been properly "selected out." The statute seems on its face to give this particular "selecting out" power to a Selection Board, not the Secretary, and it may be doubted that an officer can ever be so separated except by the valid action of a Selection Board.

COLLINS, Judge, concurs in the result only.