Claiborne **J. DUHON,** Jr.

v.

The **UNITED STATES.**

No. **397–69.**

United States Court of Claims.

June 16, 1972.

Neil B. Kabatchnick, Washington, D. C., attorney of record, for plaintiff.

Karen A. Berndt, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant. J. Lawrence Heizmann and Christine O. Cook, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

The question before us in this case is whether the failure of the Air Force Board for the Correction of Military Records (AFBCMR) to change plaintiff's record to reflect a return to a reserve commission status was arbitrary and capricious. We hold that it was.

Plaintiff served in both enlisted and officer status in the Air Force during World War II. He was released to the inactive reserve and was reactivated on August 6, 1951. At that time, his promotion list service date (PLSD) was determined to be November 2, 1949, to give him credit for the prior service. On April 15, 1961, plaintiff was promoted to a permanent Major, Air Force Reserve. On September 25, 1961, he was selected to receive a regular commission as a temporary Major (plaintiff was serving on active duty as a Captain at the time), selection to be effective July 15, 1962. He actually began serving as a temporary Major on that date.

Previously, on April 30, 1962, plaintiff had been awarded a *regular* Air Force commission as *permanent* Captain (effective May 9, 1962). This vacated his reserve commission. His PLSD was again determined to be November 2, 1949, and his date of rank was determined to be November 2, 1956. On November 5, 1962, plaintiff was selected to receive a commission as permanent Major. On February 18, 1963, he was notified of this selection.

On October 9, 1963, plaintiff was suddenly notified that there was an error in the computation of his date of rank. His date of rank was changed from November 2, 1956, to July 8, 1958, and his PLSD was changed from November 2, 1949, to July 8, 1951. The mistake in the original dates was admittedly an error of the government. Plaintiff's selection for permanent Major was apparently now "without effect." Defendant, however, failed to inform plaintiff of the significance of the change in his PLSD. Plaintiff was not notified that the selection board was "invalidated," and that he would have to be reselected by a new selection board at some date in the future.

Plaintiff was not accorded an opportunity of electing to return or revert to his prior Reserve status as a permanent Reserve Major. Nor was he informed by anyone in the Air Force as the alternatives available to him, i. e. remain in the Regular Air Force and go through the selection process again, or resign his regular commission and seek reappointment to his Reserve contingent.

On November 2, 1964, plaintiff was again considered for Major but was not selected. On November 8, 1965, plaintiff was further considered for Major, but was not selected. Plaintiff faced mandatory separation in July of 1966. In order to preserve his retirement benefits, he resigned prior to that date and served as an enlisted man until he completed his 20 years. On August 30, 1968, plaintiff retired as a staff sergeant, having been reappointed a few months earlier (March 1, 1968) as a Major, Air Force Reserve.

The history of this adjudication began on February 11, 1966, when plaintiff filed an application with the AFBCMR to have his records corrected,

reestablishing his active duty reserve status effective May 8, 1962 (the day before his April 30, 1962, Captaincy became effective). His promotion to permanent Major in the Air Force Reserve on April 15, 1961, had made him automatically eligible to complete at least 20 years active commissioned military service as a Major (when promoted to temporary Major on July 15, 1962). Had this relief been granted by the AFBCMR, plaintiff could have served straight through until 1968 as a Major and would not have been forced to serve 2 years in an enlisted status prior to his retirement.

On May 11, 1966, plaintiff refiled with the AFBCMR, under AFR 31–3, as advised by the Air Force. He requested the same relief. Plaintiff was not, at either filing, represented by counsel. On April 25, 1966, plaintiff's application was denied by the AFBCMR.

On January 12, 1968, plaintiff applied for reappointment as a reserve officer for the retirement list. On February 27, 1968, plaintiff was offered an indefinite appointment as a Major in the Air Force Reserve. On March 1, 1968, he executed the oath of office as a Major (USAFR).

Plaintiff alleges that the action of the AFBCMR in denying his request for relief was arbitrary and capricious. He therefore sues in this court for the monthly active duty pay and allowances of a Major, USAF, from July 31, 1966, to August 30, 1968, less such pay and allowances paid to plaintiff by defendant as an Airman First Class or Staff Sergeant, USAF, during the same period.

It is clear that the AFBCMR had the power, and the duty, to remove injustices and correct errors. 10 U.S.C. § 1552 (1970) states:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department

when he considers it necessary to correct an error or remove an injustice.

Our first question is whether the Air Force made an error or committed an injustice with respect to the plaintiff. A look at the Air Force's actions will show that it did. Defendant never informed plaintiff of his rights in October of 1963 when he was suddenly notified that there was an error in the computation of his date of rank. Although the mistake was admittedly an error of defendant, the government never informed plaintiff of his alternative courses of action. Plaintiff was never given even the slightest suggestion that the fact that his selection to Major was "without effect," in reality meant that his selection was not just postponed, but firmly and completely invalidated.

Until that time, plaintiff's career had been moving along at a steady pace in the military. He had advanced regularly, moving through various grades of both Reserves and Regulars, until he was finally serving as a Major. Nothing in his outstanding record would have suggested that his selection for permanent Major in the Regular Air Force would not have taken effect in due course. Suddenly a simple error on the part of the government, a little mistake, destroys his career.

Indeed, a further injustice was undoubtedly brought about by the action of the military invalidating plaintiff's selection for Major because of the error in his date of rank. When his case again came up before the new selection boards, in 1964 and again in 1965, he clearly must have looked like a "pass over." This could well have affected his future chances for promotion. Thus, the same "simple error," further compounded, acted again to destroy plaintiff's career.

Having established both that the Air Force had made an error and thereafter compounded it by failing to counsel plaintiff, we must now review the action of the AFBCMR to determine if their

refusal to correct plaintiff's records was arbitrary and capricious.

The AFBCMR could quite easily have corrected plaintiff's records reestablishing his active duty reserve status; or, looking at the problem another way, after the mistake was discovered, defendant could have permitted plaintiff to resign and immediately seek reappointment to the Reserves.[1] This would have permitted him to have served at least 20 years in active commissioned military service. It is unrealistic to assume that plaintiff would not have been reappointed to the Reserves. All military services have long had a clear, established policy of encouraging enlistment or reenlistment in Reserve Forces.

An obvious injustice, created totally by an error of the defendant, was not corrected by the appropriate military board, which had the power so to do. There is no doubt that this court has the right to review the action of the AFBCMR. Judge Littleton, speaking for this court in Friedman v. United States, 158 F.Supp. 364, 141 Ct.Cl. 239 (1958), emphasized our jurisdiction to review an adverse decision by a board for the correction of military records. He stressed that

the sort of "review" contemplated in an action to recover lost pay in the Court of Claims is an original suit for a money judgment * * *. [S]uch "reviews" by this court to determine whether or not pay has illegally been withheld from a member or former member of the military services, have long been sanctioned by this court and the Supreme Court. 158 F.Supp. at 376, 141 Ct.Cl. at 258–259.

See also Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936); Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353 (1934); Spencer v. United States, 102 F.Supp. 774, 121 Ct.Cl. 558, cert. denied, 344 U.S. 828, 73 S.Ct. 29, 97 L.Ed. 644 (1952); Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650 (1947).

In Friedman, the court concluded that Congress had no intention, in enacting the correction board legislation, of withholding from this court jurisdiction to render a money judgment for pay of which a claimant is deprived by reason of the arbitrary or illegal action of a correction board in either wrongfully refusing to correct the record, or wrongfully refusing to order payment of amounts due on account of a proper correction made by the board. 158 F.Supp. at 376, 141 Ct.Cl. at 259.

See Prince v. United States, 119 F.Supp. 421, 127 Ct.Cl. 612 (1954). See also 41 Op. Att'y Gen. 94 (1952).

We have previously held that a "Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." Caddington v. United States, 178 F.Supp. 604, 607, 147 Ct.Cl. 629, 634 (1959). In Eicks v. United States, 172 F.Supp. 445, 145 Ct. Cl. 522 (1959), a commissioned officer of the Navy retired for disability sued to recover active duty pay for the period of unused, accumulated leave to his credit and denied to him prior to his retirement and the increased retired pay which would result if his retirement had become effective at the termination of this unused annual leave. We held that the Secretary of the Navy's refusal to correct the officer's record to show that he was on leave for the period of his accumulated unused leave and was thereafter retired, was arbitrary and capricious. Even though Navy Regulations in effect at the time of the officer's retirement asserted that leave was "a priv-

---

1. It is true that plaintiff was ineligible for appointment to the Reserves while he was serving as a commissioned officer on active duty (AFM 36–5B, par. 8a, 26 June 1963), but plaintiff's resignation would have made him eligible (AFM 36–5B, par. 7c(2), 26 June 1963).

ilege and not a right," [2] we held that the use of accumulated leave was a matter of right.

The court speaking through Mr. Justice Reed (Ret.) said:

When Congress said that rulings of the Correction Boards should "be final and conclusive on all officers of the Government except when procured by means of fraud" (65 Stat. 655), it would overturn much of our thinking on justice to say that those words were intended to bar courts from awarding pay to military personnel when they had been deprived of their compensation by failure to correct their service record through arbitrary and capricious action. The correction boards were created to remedy wrongs not to confound them. Id. 172 F. Supp. at 448, 145 Ct.Cl. at 527.

In Betts v. United States, 172 F.Supp. 450, 145 Ct.Cl. 530 (1959), where an Army officer resigned his commission because of a heart condition which Army officials erroneously advised him was not a ground for disability retirement, this court awarded the officer a money judgment for the retired pay which he should have and would have received if the Secretary of the Army had corrected the officer's record and placed him on such retired list.

Here, Judge Madden, speaking for the court, said:

It then becomes a question whether the plaintiff shall forfeit and lose valuable rights because of the inaction of the official who had those rights in his custody or whether the court shall act upon the evidence which the official failed to act upon and, so far as it is within the power of the court, award the plaintiff his rights. We have in former decisions chosen the latter course, and we do so now. Id. 172 F.Supp. at 453, 145 Ct.Cl. at 535–536.

*Accord,* Eicks v. United States, *supra. See* Schiffman v. United States, 319 F. 2d 886, 162 Ct.Cl. 646 (1963).

Similarly, in this case, plaintiff has suffered because of an error made solely by the Air Force. The AFBCMR's decision not to relieve the injustice was arbitrary and capricious based on the evidence it had before it.

Plaintiff's motion for summary judgment is granted and defendant's like motion is denied. Plaintiff is entitled to recover on his claim and judgment is entered to that effect with the amount of the recovery to be determined pursuant to Rule 131(c).

---

2. Bureau of Naval Personnel Manual, 1942, Ch. 6, Leave, C–6001(7) as cited in 145 Ct.Cl. at 529, 172 F.Supp. at 449.