Nichols, Judge,
concurring:
I concur in the result. Eespectfully, I venture to differ with the court’s reasoning on only one or two points, though agreeing with most of what it has to say.
The Act, 10 U.S.C. § 1552, for Correction of Military Eec-ords, was passed in 1946 in course of an ambitious effort in legislative reorganization, to delegate the function of considering what had been private bills passed upon, at least theoretically, by the entire Congress. The Indian Claims Commission Act, 25 U.S.C. § 70a and ff., also was bom in the same spasm; the two Acts are twins in other respects than that both make this court a lot of work. In view of their ori *14 gin, both must be regarded as delegating legislative authority. Both call for recognition and enforcement of moral obligations, which is primarily a legislative function. United States v. Realty Co., 163 U.S. 427 (1896). Normally the legislature transmutes moral obligations into legal, which judicial and quasi-judicial tribunals then enforce. Here the two functions are merged into one.
In 1946 the citizen soldiers and sailors drafted to fight World War II were pouring back into civil life. The feeling — right or wrong — was that many of them might be handicapped by bad military records created without due process in the hurly-burly of the war, and that the career military who would remain in charge at the Pentagon would not be much interested in effecting corrections. Hence the provision that the Service Secretaries should act “through boards of civilians”. I have never had explained to me just what that language means. On the one hand, the legislative purpose would appear to be frustrated if the Board members are simply part of the Secretaries’ staff advisers, to be overruled at pleasure. On the other, it has never been held that he must delegate full authority to the civilian Board, as he does with Wunderlich reviews of contract disputes. That Act, 41 U.S.C. § 321-22, offers more sweeping protection to the citizen against military absolutism in his capacity as contractor, than the Correction Board legislation affords him in his capacity as a uniformed military employee, possibly an involuntary one. But the latter Act must be construed to accomplish some purpose, in everything that it says. It could have said the Secretary could correct military records, taking advice from whatever source he pleased. When Congress said he was to do it through a civilian Board, this must have had a meaning. Proper v. United States, 139 Ct. Cl. 511, 154 F. Supp. 317 (1957). See, Ogden v. Zuckert, 298 F. 2d 312, 316 (D.C. Cir. 1961).
In light of the foregoing the Air Force regulation, AFR 31-3, is notably silent as to whether the Air Force Secretary is required to attach any weight to Board decisions. This presents at least a potentiality of frustrating the Congressional intent, and explains the care with which we always, *15 as here, scrutinize a Secretary’s decision overruling a Correction Board. A declaration of the guidelines the Secretary follows in performing his review function would ease our task considerably. It is true the Secretary also is a civilian, but he is so dependent on his military subordinates that this fact alone is often, as in the legislation here involved, not deemed enough to effectuate our constitutional supremacy of civilian over military authority. If we find the overruling of the Board was achieved by or through a military adviser, the action is set aside. Weiss v. United States, 187 Ct. Cl. 1, 408 F. 2d 416 (1969); Proper v. United States, supra. The court cites three other instances, before Weiss, when we reinstated a Board decision after a Secretary had overruled it. Hertzog v. United States, 167 Ct. Cl. 377 (1964) ; Betts v. United States, 145 Ct. Cl. 530, 172 F. Supp. 450 (1959); Eicks v. United States, 145 Ct. Cl. 522, 172 F. Supp. 445 (1959). In those cases, the Secretary’s decision appeared arbitrary in face of the Board record and the facts that the records showed; therefore, even if the Board had recommended that the Secretary do what.he did, reversal of the Secretary would very likely have been our decision. I do not read the decisions as affording any help as to what was added to the Secretary’s duty to take a particular action by the fact the Board recommended he take it.
I am inclined to think the Secretary can and should reject a Board recommendation when he observes upon review that it is contrary to law, arbitrary and capricious, or not supported by substantial evidence. These are our review standards. Cooper v. United States, 203 Ct. Cl. 300 (1973). He must, however, recognize that the Board is, within reasonable limits, a policy-making body. It is for the Board, given a state of facts, to say if it is an error or injustice. Its discretion must be broad' even if not unlimited. The Secretary may not reverse it merely because his nose for injustice is less sensitive than the Board’s. In my view, however, a Board decision is contrary to law if it runs up against the declared policy of a law, i.e., its charter does not include the power to go around overriding other laws ad lib. See, Mayer v. United States, 201 Ct. Cl. 105, 107 [Nichols J., concurring] (1973).
*16 The use of Selection Boards to select regular officers for promotion (10 U.S.C. § 8297) and the retirement of those not selected (10 U.S.C. § 8303) are basic to the performance of the Air Force mission. It is a highly sensitive and discretionary function. We were told that the Selection Board plaintiff complains of had to pass over 20% of the names before it. These Boards and the way they operate are just as much products of the Congressional will as Correction Boards are. I do not believe either one is entitled to override the other. A Selection Board decision based on a misleading and unjust record cannot stand, Weiss, supra, but if it is legally made within the Selection Board’s powers, it is the duty of the Secretary to defend it against all interference. The Correction Board here would have promoted plaintiff though it had no information in its record to show his qualifications were superior to those of others who were passed over, and I judge that sooner or later, because of the limited number of slots, someone else would not have been promoted, if plaintiff was, which other person could, so far as the Correction Board knew, perfectly well have had superior qualifications to the plaintiff’s.
Plaintiff had able and persuasive counsel who made the most of what appears to me to be a weak case, weak for reasons well analyzed by Judge Bennett. It is impossible to find any clearcut falsity or unjust derogation of plaintiff in the O.E.B.. under attack, on careful study of it in chambers. The Secretary’s analysis was essentially the same as ours. Having made it, he had to draw the conclusion that the Correction Board would interfere with the Selection Board in a matter within the the latter’s exclusive jurisdiction. I do not view this as a discretionary decision; it was one it was his duty to make. Had he analyzed the facts as the Correction Board did, his duty would have been different, but such an analysis would have been hard to defend. The substantial evidence rule was not available to sustain the Board. The evidence in the record was undisputed and the result turned on the interpretation of documents. I am not, of course, saying that a promotion would be ultra vires for the Correction Board under all circumstances.
*17 My difference with Judge Bennett is that I see tbe matter as more governed by law and less - governed by executive discretion than be does.
Plaintiff clearly was an officer of great value to tbe Air Force and one may bope tbat, even now, some way may be discovered to make use of bis services. Tbe undermining of tbe Selection procedure is, to me, just simply not tbe way to go about it. It does more wrong than it rights.